FRANK CROCETTO *v.* LYNN DEVELOP-
MENT CORPORATION
(14475)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued April 28—decision released August 11, 1992

*Edward T. Dodd, Jr.,* for the appellant (defendant).

*Deborah M. DelBuono,* for the appellee (plaintiff).

BERDON, J. The sole issue in this appeal is whether a "subsistence allowance" provided to a former employee while enrolled in a workers' rehabilitation program constitutes "workers' compensation payments" within the meaning of General Statutes § 31-284b (a)[1] so as to trigger mandatory health insurance coverage. In this case, the plaintiff, Frank Crocetto, who had been injured during the course of his employment with the defendant, Lynn Development Corporation, continued to receive health insurance coverage under the defendant's group plan until he exhausted his permanent partial disability benefits under General Statutes § 31-308.[2] Subsequently, the plaintiff received a weekly subsistence allowance when he enrolled in a workers' rehabilita-

[1] General Statutes § 31-284b (a) provides: "In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, *any employer,* as defined in section 31-275, *who provides accident and health insurance or life insurance coverage for any employee* or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund, as defined in section 31-53, *shall provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter,* or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury." (Emphasis added.)

[2] General Statutes § 31-308 provides in relevant part: "(a) If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the amount he is able to earn after such injury, except that when (1) the physician attending an injured employee certifies that such employee is unable to perform his usual work but is able to perform other work, (2) such employee is ready and willing to perform such other work in the same locality and (3) no such other work is available, such employee shall be paid his full weekly compensation subject to the provisions of this section. In either of the above cases, such compensation shall in no case be more than

tion program established under General Statutes
§ 31-283a.[3] While receiving the weekly subsistence
allowance, he sought to have his health insurance cover-
age reinstated. The workers' compensation commis-
sioner (commissioner) concluded that the plaintiff and
his family had been entitled to insurance coverage from
the time the coverage had been terminated to the time
the plaintiff's participation in the rehabilitation pro-
gram had ended. The commissioner, therefore, ordered
the defendant to reimburse the plaintiff for medical
expenses incurred during that period. The compensa-
tion review division (CRD) affirmed the commissioner's
decision. The defendant appealed,[4] and we now reverse.

Although the parties dispute several factual allega-
tions, the following facts are not contested. In Novem-
ber, 1984, during the course of his employment with

the maximum weekly benefit rate set forth in section 31-309 and shall con-
tinue during the period of partial incapacity but no longer than seven hun-
dred and eighty weeks. If the employer procures for an injured employee
employment suitable to his capacity, the wages offered in such employment
shall be taken as the earning capacity of the injured employee during the
period of such employment."

[3] General Statutes § 31-283a provides: "There shall be within the work-
ers' compensation commission a division of workers' rehabilitation which
shall provide rehabilitation programs for employees suffering compensa-
ble injuries within the provisions of this chapter, which injuries disabled
them from performing their customary or most recent work. Said division
shall be administered by a full-time salaried director who shall be appointed
under the provisions of chapter 67. Said director shall establish rehabilita-
tion programs which shall best suit the needs of such injured employees
and shall make such programs available in convenient locations through-
out the state. After consultation with the workers' compensation commis-
sion and the labor commissioner, said director may establish fees for such
programs, so as to provide the most effective rehabilitation programs at
a minimum rate. In order to carry out the provisions of this section, sec-
tion 31-283b and section 31-283c, the commission shall adopt regulations,
on or before October 1, 1986, in accordance with the provisions of chapter
54 and, subject to the provisions of said chapter 67, provide for the employ-
ment of such assistants as are necessary."

[4] The defendant appealed to the Appellate Court pursuant to General Stat-
utes § 31-301b, and we transferred the appeal to this court pursuant to Prac-
tice Book § 4023 and General Statutes § 51-199 (c).

the defendant, the plaintiff injured his back. The injury resulted in a 10 percent permanent partial disability of the back. At the time of the injury, the defendant supplied Blue Cross/Blue Shield health insurance to the plaintiff and his family. Following the injury, the plaintiff was no longer able to work for the defendant.

The plaintiff received temporary total disability benefits from November 30, 1984, until October 21, 1985, under the Workers' Compensation Act (act). Thereafter, he received permanent partial disability benefits under the act. During the period in which these temporary and permanent benefits were paid under § 31-308, the defendant continued to provide health insurance coverage to the plaintiff and his family pursuant to § 31-284b. When the plaintiff exhausted his permanent partial disability benefits in October, 1986, the defendant terminated the plaintiff's health insurance coverage.

Sometime after October, 1986,[5] the plaintiff received eight or nine weeks of supplemental partial permanent disability payments pursuant to General Statutes § 31-308a.[6] In September, 1987, the plaintiff enrolled

---

[5] The parties disagree on the period of time in which the plaintiff received the payments pursuant to General Statutes § 31-308a and the length of time for which the commissioner intended to extend these payments to the plaintiff.

[6] General Statutes § 31-308a provides: "In addition to the compensation benefits provided by section 31-308 for specific loss of a member or use of the function of a member of the body, or any personal injury covered by this chapter, the commissioner, after such payments provided by said section 31-308 have been paid for the period set forth in said section, may award additional compensation benefits for such partial permanent disability equal to two-thirds of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the weekly amount which such employee will probably be able to earn thereafter, to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age, but not

in the vocational rehabilitation training program under § 31-283a. From September, 1987, to August 25, 1989, the period during which the plaintiff had attended the program, the CRD found that the plaintiff had received a weekly subsistence vocational rehabilitation allowance,[7] from the division of workers' rehabilitation, which was purportedly established under § 31-283a.

Because the plaintiff was receiving this subsistence allowance, he sought to reinstate his health insurance coverage in accordance with § 31-284b (a). The commissioner concluded that the plaintiff's receipt of the subsistence allowance triggered the statutory mandate for the defendant to provide health insurance coverage to the plaintiff and his family. Accordingly, the commissioner determined that the plaintiff should have been covered from October, 1986, when the health insurance coverage had been terminated, to August 25, 1989, when the plaintiff finished his vocational rehabilitation training and the subsistence allowance was terminated. He ordered the defendant to reimburse the plaintiff for any medical expenses that Blue Cross/Blue Shield would have covered during that period. Pursuant to the defendant's motion for articulation, the commissioner clarified his opinion and held that the plaintiff's family was also entitled to health insurance coverage. The defendant appealed to the CRD, which affirmed the decision of the commissioner.

more than the maximum provided in section 31-309. If evidence of exact loss of earnings is not available, such loss may be computed from the proportionate loss of physical ability or earning power caused by the injury. The duration of such additional compensation shall be determined upon a similar basis by the commissioner."

[7] Although the defendant questions whether the record supports the CRD's conclusion that the plaintiff had received the subsistence allowance while attending classes in the vocational rehabilitation program, it failed to seek any clarification before the CRD. Moreover, at oral argument before this court, the defendant did not contest the plaintiff's repeated assertions that he had received the allowance.

In this appeal, the defendant argues that § 31-284b (a) does not require an employer to provide health insurance coverage to an employee receiving a subsistence allowance and that the CRD, therefore, improperly affirmed the commissioner's conclusion that it was obligated to provide health insurance coverage to the plaintiff and his family. We agree.

Section 31-284b (a) mandates that an employer provide an injured employee with the same health insurance coverage that the employee had on the date of injury during the period in which the employee is "eligible to receive or is receiving workers' compensation payments" pursuant to the act. The issue, therefore, is whether a subsistence allowance is such a payment under the act. We normally accord great deference to the construction of a statute by the agency charged with its enforcement and only reverse when the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). We conclude, however, that a subsistence allowance is not a payment authorized by the act and, therefore, health insurance coverage should not be reinstated because of the award of such an allowance.

The plaintiff conceded at oral argument that a subsistence allowance is not authorized by statute or by administrative regulations. Instead, the plaintiff maintains that the first director of the workers' rehabilitation division initiated the distribution of the subsistence allowance in 1972 by drawing upon funds that were created under General Statutes § 31-283b[8] to finance

---

[8] General Statutes § 31-283b provides: "In order to finance the cost of the rehabilitation division and the programs established by its director, each employer, other than the state and any municipality participating for purposes of its liability under this chapter as a member in an interlocal risk

the workers' rehabilitation division. Although the record is silent with respect to the workers' rehabilitation division's authority to award a subsistence allowance, we do not dispute that this may very well be the policy of the division.[9] The mere fact that a practice may exist to award subsistence allowances to participants in the rehabilitation program, however, does not persuade us that the receipt of such an allowance triggers an employer's obligation to provide health insurance coverage to an injured employee and his or her family. To constitute the basis for triggering the obligation to provide health insurance coverage, the subsistence allowance must have been required either by statute or by regulation authorized by the legislature and promulgated in accordance with the procedure outlined in the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. *Salmon Brook Convalescent Home v. Commission on Hospitals & Health Care*, 177 Conn.

management agency pursuant to chapter 113a, shall annually, on or before July first, pay to the state treasurer for the use of the state for the cost of operating this division a sum equal to two per cent of the total amount of money expended by such employer or by a private insurance carrier on his behalf in payment of his liability under this chapter for the preceding calendar year. The sums received shall be kept separate and apart from all other state moneys and the faith and credit of the state of Connecticut is pledged for their safekeeping. The treasurer shall be the custodian of said fund and all disbursements therefrom shall be made by him or his deputies. The moneys of said fund shall be invested by him in accordance with law. Interest, income and dividends from such investments shall be credited to the fund. Each such employer and each private insurance carrier acting on behalf of any such employer shall annually, on or before April first, report to the treasurer, in the form prescribed by the treasurer, the amount of money expended by or on behalf of the employer in such payments for the preceding calendar year."

[9] According to the plaintiff, the award of the allowance is conditioned upon approval by the director of the workers' rehabilitation division and is limited by the amount of money available in the fund. Apparently, the guidelines for the disbursement of the subsistence payments are contained in article 4.1 of the "standard guidelines" for the division of workers' rehabilitation, which the workers' compensation commission has reviewed and endorsed.

356, 417 A.2d 358 (1979). We conclude that the ad hoc award of subsistence allowances does not qualify as "workers' compensation payments" under § 31-284b. Accordingly, we reverse the decision of the CRD.

This conclusion, however, does not end our inquiry. At oral argument, the defendant conceded that it had prematurely terminated the plaintiff's family health coverage while the plaintiff was receiving payments under § 31-308a.[10] The parties, however, dispute both the actual time the plaintiff received the payments and the length of time the commissioner intended to extend the payments.[11] There is nothing in the record that enables us to resolve this dispute. We conclude, therefore, that the matter should be remanded to the commissioner for a determination of the period that the plaintiff should have received the payments under § 31-308a. Once that determination is made, the commissioner shall order the defendant to reimburse the plaintiff for any medical expenses incurred during that period by the plaintiff and his family that would have been covered by the defendant's health insurance carrier.

The decision of the compensation review division is reversed, and the case is remanded to the compensation review division with direction to remand the case

---

[10] The defendant asserted at oral argument that although the plaintiff is entitled to medical insurance coverage during the time he was eligible for payments pursuant to General Statutes § 31-308a, such insurance coverage did not extend to members of the plaintiff's family. The defendant, however, conceded that it did not appeal the CRD's determination that it was responsible for insurance coverage for the plaintiff's family and, therefore, it must provide that coverage retroactively for the plaintiff's family as well as for the plaintiff.

[11] The plaintiff argues that he received these payments for eight or nine weeks beginning on January 7, 1987, and continuing until sometime in March, 1987. The defendant maintains that the plaintiff received these payments from November, 1986, to December, 1986, or January, 1987. The plaintiff further maintains that the commissioner informed him that the payments under General Statutes § 31-308a were to extend for a six month period; the defendant maintains that the payments were to expire after a twelve week period.

to the workers' compensation commissioner for further proceedings consistent with this opinion.

In this opinion the other justices concurred.