[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPEAL
This is an appeal from the suspension for six months of the defendant's license. CT Page 1219
The following facts are relevant to a discussion of the issues before the court, although further facts will be alluded to as particular claims are addressed.
On April 23, 1993, plaintiff, Marshall J. Mott, was operating a motor vehicle on Old Farms Road, Avon, Connecticut, when he was involved in a one car accident. The Avon Police responded to the scene of the accident and took the plaintiff to the Avon Police Department where, with his consent, plaintiff was administered a direct breath alcohol test. After taking such direct breath alcohol test, the plaintiff declined the opportunity afforded him to take a second direct breath alcohol test. As a result of the direct breath alcohol test administered by the Avon Police Force, plaintiff was arrested for violating Conn. Gen. Stat. § 14-227a.
Pursuant to Conn. Gen. Stat. § 14-227b, plaintiff's operator's license was revoked and a temporary operator's license was issued. On April 29, 1993, the plaintiff was notified that his motor vehicle license was being suspended for a period of six months for the reason that he refused to take a chemical alcohol test. By order of this Court dated June 30, 1993, the suspension of plaintiff's operator's license has been stayed pending decision on this appeal.
On May 5, 1993, plaintiff was summoned to appear at a hearing to be conducted on May 18, 1993, at the Department of Motor Vehicles, the purpose of which hearing was "to determine whether [plaintiff's] driver's license should be suspended." In the notice of hearing the plaintiff was told he would have an opportunity to respond to the claim that he refused chemical testing.
At the hearing, the hearing officer, over plaintiff's objection, proceeded with a hearing that included evidence reviewing the four statutory criteria for suspension of a motor vehicle operator's license. There statutory criteria were also referred to in the notice of hearing.
Sergeant Steven Howe, who was responsible for conducting the chemical alcohol tests on plaintiff, testified at the hearing. CT Page 1220
An extensive examination of Sergeant Howe occurred in which the plaintiff sought to establish that proper testing procedures were not used in procuring the chemical analysis and department regulations were not followed. Also the question of whether Howe advised the plaintiff of the consequences of refusing a second test was explored.
On May 21, 1993 the hearing officer affirmed the suspension of the plaintiff's operator's license for a period of six months.
 I. Whether or not Ninety Day Suspension Appropriate Instead of Six-Month Suspension.
The plaintiff argues that he submitted to a direct breath alcohol analysis test and should have received a ninety-day suspension rather than a six-month suspension. The plaintiff bases his position on a reading of state statutes and regulations. The defendant basing its argument on the same sources argues a six-month suspension is appropriate.
"Section 14-227b(h) provides that:
 "The commissioner shall suspend the operator's license . . . of a person, for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten hundredths of one percent or more of alcohol by weight or (B) six months if such person refused to submit to such test or analysis . . . .
"Subsection (i) of § 14-227b says that:
 "(i) The provisions of this section shall apply with the same effect to the refusal by any person to submit to an additional chemical test as provided in subdivision (5) of subsection (c) of Section 14-227a."
When we turn to § 14-227a, the penal statute, and look CT Page 1221 at "subdivision (5) of subsection (c)" that subdivision reads:
 "(5) an additional chemical test of the same type performed at least thirty minutes after the initial test was performed, provided however the results of the initial test shall not be inadmissible under this subsection if reasonable efforts were made to have such additional test performed in accordance with the conditions set forth in this subsection and such additional test was not performed or was not performed within a reasonable time, or the results of such additional test are not admissible for failure to meet a condition set forth in this subsection.
It is interesting to note that both sides in this case claim that a plain reading of the statutory language supports their respective positions. Unfortunately they reach opposite conclusions and that only underlines the convoluted and almost indecipherable nature of the language used in these two statutory sections which is only compounded when one refers to the other.
The difficulty arises because § 14-227a in general and its subsection (c) and (c)(5) in particular have a different purpose from § 14-227b and subsections (h) and (i) of that statute. Section 14-227a(c) is concerned with the question of the admissibility in a motor vehicle prosecution of a chemical test. It defines the pre-requisites for such admission including in (c)(5) the bearing, if any, on the failure to perform an additional test after the first one. Removing the double negatives in (c)(5) it seems to be saying that the results of the initial test will be let into evidence even though an additional test was not performed within thirty minutes as long as the police made reasonable efforts to have such an additional test done but despite those efforts a test could not be performed or at least performed in a reasonable time. Also (c)(5) seems to say the performance of the additional test within thirty minutes, where one was given will satisfy the prerequisite for the admission of the initial test even though the conditions set upon subsection (c) were not met when the additional test was given — in such a case the initial test results can come into evidence CT Page 1222 but not the results of the additional test. If the conditions such as attorney contact, machine testing were met as to the first test that is considered protection enough and will not bar receipt into evidence of the initial test even though the additional test though performed within thirty minutes did not comply with all the conditions set down for the initial test.
Section 14-227b and subsections (h) and (i) of that section have nothing to do as such with the admissibility of initial test results in a prosecution. They deal with the suspension of licenses and the length of such suspensions for refusal to submit to chemical testing.
The plaintiff argues that his license should be suspended for only ninety days under § 14-227(b) because subsection (h) provides for a ninety-day suspension if a chemical test was done and it showed a certain ratio of alcohol in the blood. Such a test was done and there is no explicit requirement for an additional test so the statute only permits a ninety-day suspension.
The difficulty I have with this position is that it reduces subsection (i) of § 14-227b to irrelevance. I believe subdivision B of subsection (h) should be read together with subsection (i).
"A person's license is suspended under (h)(B) for:
 "Six months if such person refused to submit to such test or analysis.
"Subsection (i) then says:
 "The provisions of this section (referring to the whole of § 14-227b including its subsections such as (h)) shall apply with the same effect to the refusal by any person to submit to an additional chemical test as provided in subsection (5) of subsection (c) of section 14-227a."
Although the language is not crystal clear, it is difficult to understand what this means if it does not mean failure to submit to an additional test is tantamount to refusal to submit to testing as such with all the CT Page 1223 consequences that entails under § 14-227(b). I think the operative language in subsection (i) is the reference to a "chemical test" as such and it only causes confusion to engage in convoluted analysis about the import and bearing of the language in § 14-227a(c) which is concerned with a different problem having nothing to do with administrative suspension of licenses, but has to do with the introduction of certain evidence in a motor vehicle prosecution.
Also the Commissioner in R.C.S.A. § 14-227b-7 in seeking to implement the provisions of § 14-227b
promulgated the following regulation:
 "A person who refuses to submit to a second blood, breath or urine test of the same type after having taken a first test shall be deemed to have refused to submit to a chemical analysis."
It is a traditional rule of statutory construction that the interpretation given to a legislative enactment by an agency charged with enforcing its requirements should be given great weight, Crocetto v. Lynn Development Corp. ,223 Conn. 376, 381 (1992). Although the courts are not bound by such interpretations especially when not of long duration, Schieffelin Co. v. Dept. of Liquor Control,194 Conn. 165, 174 (1984), no reason has been offered by the plaintiff as to why the administrative interpretation of the statutory scheme would lead to an unfair result or conflict with the general purposes of the statutory scheme. These considerations are especially appropriate, I believe, where the statutory language is not clear.
In addition to his statutory analysis it is true that the plaintiff argues that "another regulation, § 14-227a-10, regulates exclusively the method of operation of instruments used to conduct direct breath alcohol analyses . . . . Regulation 10 does not require the taking of at least two direct breath alcohol tests. Moreover Regulation 10 does not address the consequences, if any, of a subject's refusal to take a second direct breath alcohol analysis test." (Plaintiff's brief, pp. 9-10). That is exactly true, but Regulation § 14-227b-7 must be read together with Regulation 10 and when this is done it is clear that the commissioner through the regulations has CT Page 1224 provided that if a person refuses the second test after taking a first test he or she shall be deemed to have refused to submit to a chemical analysis. Regulation 10 is procedural in nature and even the plaintiff's reading of it standing alone is open to question. The regulation explicitly refers to the taking of more than one test — it refers to the collection of "each" sample and says sample(s)" of the person's breath shall be collected in a certain way set forth in the regulation.
For all these reasons the court concludes that a six month as opposed to a ninety day suspension is authorized by statute and agency regulation for refusal to take an additional chemical test.
 II. Whether Constitutional Rights of Plaintiff Violated by Police Failure to Adequately Inform Him of Consequences of Declining a Second Test
The plaintiff argues that because the police did not warn him of the consequences of his decision not to submit to a second test his decision not to do so cannot be deemed to be a "refusal" within the meaning of the statutes.
This is an appeal after a hearing before the agency. It is not my function to retry this case or substitute my judgment for that of the commissioner, Buckley v. Muzio,200 Conn. 1 (1986). The credibility of witnesses and the determination of issues of fact are not the court's task but that of the administrative agency and "if there is evidence . . . which reasonably supports the decision of the commissioner . . . (the court) cannot disturb the conclusion reached by him," DiBernedetto v. Commissioner ofMotor Vehicles, 168 Conn. 587, 589 (1975).
The officer who testified at the hearing stated that he read the so-called A-44 Form to the plaintiff after he declined to submit to a second test. It is true that the warning on that form does not tell the motorist that refusal to take a second test will be deemed to be a refusal to take a chemical test at all thus resulting in a six month as opposed to a ninety day suspension of license. But the officer testified that he told the plaintiff "several times" that refusal to take a second test would constitute a refusal to take the entire test resulting in CT Page 1225 a longer period of suspension — for six months not three months. On the basis of this record, I can not disturb the hearing officer's finding that the policeman's testimony on this matter was more credible than not.
Furthermore as noted in Buckley v. Muzio, 200 Conn. 1,8 (1986) § 14-227b does not provide a judicial or administrative remedy for failure of an officer to warn of the consequences of a refusal to submit to chemical testing. Also see Volck v. Muzio, 204 Conn. 507, 519
(1987), Weber v. Muzio, 204 Conn. 521 (1987). These courts did not deal with the constitutional claim plaintiff now raises but casting an argument in constitutional terms does not provide a basis for making such a claim and no adequate basis has been offered for the argument. In the court said at page 521: "The legislature by Weber limiting the issue at the license suspension hearing to whether a refusal has occurred, has chosen to rely on the presumption that everybody knows the law including the consequences of breaking it." That comment provides an adequate response to any constitutional claim. The plaintiff relies heavily on Tarascio v. Muzio, 40 Conn. Sup. 505 (1986) which held that the arresting officer's failure to inform the plaintiff that his refusal to submit to a chemical sobriety test could be used against him in a criminal case rendered the commissioner's decision to suspend the plaintiff's license "contrary to law", id. at page 511. Tarascio does not base its holding on constitutional grounds. What does it exactly mean to say the commissioner's decision is "contrary to law"? Contrary to what law — the law that says you can not introduce refusal to take the test into the criminal trial? But what does that have to do with suspension of an operator's license? In any event Tarascio
can not be authority for anything since, as the defendant points out, the appellate court apparently issued an order to the trial court to set aside its decision and dismiss the administrative appeal which it did.
 III. Whether Regulation § 14-227b-7 Violates Article II of the State Constitution in that it Constitutes an Improper Usurpation of the Legislative Power by an Executive Branch Agency
In light of the court's discussion of the claim raised in Section I of this opinion, and for the reasons stated CT Page 1226 there, I do not find that the regulation in issue is an usurpation of the legislative power.
 IV. Police Failure to Comply with Regulations on Testing and Using Instruments Used for Conducting Direct Breath Alcohol Analysis
It does not seem to be disputed here that the plaintiff submitted to a first test but failed to submit to a second test. The latter refusal led to his sixth month suspension not, as the plaintiff suggests in its brief at page 20, the results of the first test.
Under these circumstances it is difficult to understand how an operator can, as the plaintiff does here, challenge the methodology and procedures used in conducting the first test. The plaintiff does not claim that his refusal to take the second test was due to a challenge he made at the time such test was offered to the procedures in the first test and thus question whether a "refusal" of the second test under such circumstances should be held against him.
Connecticut places great weight on the operator's willingness to submit to testing procedures. Under subsection (h) of § 14-227b if you refuse to take the test you are suspended for six months, whereas if you took the test and it was unfavorable to you the suspension would only be for three months. The plaintiff does not question the fact that if an operator refused the first test his or her license would be suspended for six months. Perhaps the state believes willingness to take the test shows a certain amenability to cooperate with the motor vehicle laws and enforcement procedure warranting the view that such a driver does not present as great a threat on our roads or perhaps such differentiation in treatment is meant to generally encourage people to submit to testing which ultimately will assist the law enforcement effort. The plaintiff has not mounted any general due process attack on the validity of such assumptions, and I am not about to engage in such a venture on my own.
Given these premises, an operator who refuses to take even the first test could not be heard to complain that the machine the police were going to test the operator on was CT Page 1227 not checked at the beginning of the day or that the department did not have a log book. If the fact of refusal of the second test is the critical factor, why should the failure to comply with procedural requirements as to the first test make a difference as long as the operator makes no claim that the procedural violations were the reasons for the refusal of a second test. Admittedly, the plaintiff contests the second test requirement as a prerequisite for avoiding a six month suspension, but that has nothing to do with the precise issue raised here — i.e. bearing of compliance with procedural testing requirements as to the first test.
The court will not review all the issues raised by the plaintiff relative to the police failure to comply with testing procedures and procedures for using the instruments that effectuate the tests because, on the basis of the above discussion, I do not believe it is relevant to any issue before the court. This assumes the court is right about the second test issue, if it is wrong, then an analysis of these claims does not appear necessary to protect the plaintiff's interests or right to appeal his suspension because he will prevail in any event.
 V. The Hearing Conducted By the Hearing Officer Exceeded Scope of Notice of Suspension and Summons to the Hearing. This Constitutes a Violation of State and Federal Constitutional Rights.
The notice of hearing in this case told the plaintiff in its second paragraph that at the hearing concerning the suspension he would have the opportunity to respond to the claim that he refused to submit to a chemical alcohol test after being arrested for driving under the influence.
The fourth paragraph states that the purpose of the hearing is to determine whether the plaintiff's license should be suspended in accordance with § 14-227b. Then it goes on to say:
 "The hearing shall be limited to a determination of the four issues set forth in Section 14-227b, that is: (1) Did the police officer have probable cause to arrest you for one of the CT Page 1228 offenses listed in Section 14-227b; (2) were you placed under arrest; (3) did you refuse to submit to such test or analysis; and (4) were you operating the motor vehicle. If, after such hearing, the Commissioner finds on any one of these issues in the negative, he shall reinstate your license or operating privilege. If on the other hand, the Commissioner finds in the affirmative on all fourth issues, then he will order that your Connecticut driver's license or right to operate a motor vehicle in Connecticut be suspended for six (6) months or for a longer period of time if this is not your first offense.
 At the hearing the report submitted to the Department under subsection (c) of Section 14-227b
(FORM A-44) shall be offered in evidence."
Counsel for the plaintiff went to the hearing and protested to the reception of any evidence as to the four issues referred to above and mentioned in subsection (f) of § 14-227(b). He argued that the notice of hearing only advised the plaintiff that he would be given an opportunity to respond to the claim he refused to submit to a chemical test. At the hearing he refused to stipulate that there was probable cause, operation, and arrest.
Now the plaintiff claims the notice informed him he could respond "only" to the claim that he refused to take a chemical test. He complains that despite this the hearing officer then proceeded to take evidence on the other three issues. "Clearly the plaintiff was deprived of his due process rights to prepare for and defend those additional areas that the hearing officer considered and on which he made findings adverse to the plaintiff." (Plaintiff's brief p. 34.)
At the hearing, however, the following occurred:
 "MR. GREENWALD (hearing officer): Are you basically stipulating that there was probable cause, operation, and arrest? (Referring to factors set forth in § 14-227b(f) and notice of hearing letter.) CT Page 1229
 "MR. WADE: No. I'm not stipulating to any of that. We haven't been summoned here to answer to that. He hasn't been suspended for that. The results of the test are not before you. The only issue is whether or not he took it. As the hearing officer knows even if a person were stone-cold sober but refused to take a test under the statute and under the regs the document's saying he can be suspended for up to six months just for failing to take the test.
 "So the issue before you now and the only issue before you is did he take the test or not. So the rest we claim is irrelevant. We don't stipulate to anything else because he hasn't been summoned in on that basis. I'll be raising shortly some statutory regulatory constitutional claims about the regs and format. Had the department elected to suspend him as a result of his failing the test that would be one thing, but he has not been put on notice of that. He's been told he's here for one reason and one reason only. I suggest as the hearing officer that' s all you can consider. You can't examine anything else. The fourth criteria that are listed in the letter are not, we suggest, subject for your review at this time because he wasn't suspended for that reason."
The claim at the hearing was based on relevancy which is certainly consistent with the legal position advanced by the plaintiff on the appeal. However, now the claim is made that the plaintiff's due process rights to "prepare for and defend" the additional areas was denied. There was no assertion of this claim before the hearing officer. There was no request for a continuance, there was an assertion that we were not notified we had to respond to those matters and they are not relevant because the plaintiff was not suspended for intoxication.
The plaintiff cannot have it both ways. He cannot say at the hearing the other three criteria are not relevant, throw in the fact that he was told he only had to respond to the refusal to take the test then come to the appeal stage and say due process was denied him because findings CT Page 1230 were made on these matters when he knows that unless such findings were made suspension would not be appropriate even if there was a refusal to take the test. Subsection (g) requires a hearing officer to make a finding on these matters and the notice of hearing so informed the plaintiff.
True, the notice of hearing letter does say that at the hearing the plaintiff would have an opportunity to respond to the claim he refused to submit to a chemical test. Two paragraphs down, however, after referring to the four criteria, the letter explicitly says: "If after such hearing the commissioner finds on any one of these issue in the negative he shall reinstate your license or operating privilege. If on the other hand the commissioner finds in the affirmative on all four issues, then he will order that your Connecticut driver's license or right to operate a motor vehicle in Connecticut be suspended for six (6) months . . . ."
Reading the language of these two paragraphs together it could not have been claimed by the defendant that this operator would have waived rights he might have had to require the department to address all four statutory criteria even though he came to the hearing with the intention on his own part of responding to the issue of the refusal to take the second test. Neither is it reasonable to conclude that by informing the plaintiff he had an opportunity to respond to the refusal issue that the defendant commissioner was consenting to go forward with a hearing that would have been a nullity. Absent a stipulation as to the other three issues — probable cause, operation, and arrest — how could the defendant have suspended the license under statutory criteria and the notice of hearing letter? I do not think it will do to present such a Hobson's choice to the defendant at the hearing stage and then in that context make a due process claim on the appeal.
There is an argument made by the defendant however that the court does not accept and will not rely on. At the hearing the plaintiff was prepared to, and did, raise evidence relative to test failure, but he did not contest or present evidence on the other three issues so I do not believe the defendant can fairly rely on the language in CT Page 1231Brazo v. Real Estate Commission, 177 Conn. 515 (1979) which pointed to the fact that the party vigorously contested at the hearing issues he claimed he had no notice of, id. at p. 519.
However, for the other reasons stated above the court concludes that there was not a violation of due process notice requirements.
For all of the above reasons, the plaintiff's appeal is dismissed.
Corradino, J.