## GARY B. KELLY *v.* CITY OF BRIDGEPORT
## (AC 19443)

Schaller, Hennessy and Daly, Js.

*twenty days after issuance of notice of the rendition of the judgment disposing of part of the issues.*" (Emphasis added.)

Argued May 9—officially released December 5, 2000

*Frank A. May,* for the appellant (defendant).

*William L. Cotter,* for the appellee (plaintiff).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities and the Connecticut Interlocal Risk Management Agency as amicus curiae.

*Richard Blumenthal,* attorney general, and *William J. McCullough* and *Philip M. Schulz,* assistant attorneys general, filed a brief for the state department of administrative services as amicus curiae.

*Opinion*

HENNESSY, J. The defendant, the city of Bridgeport (city),[1] appeals from the decision of the compensation review board (board) affirming the workers' compensation commissioner's finding that the plaintiff, Gary B. Kelly, is entitled to benefits pursuant to General Statutes § 31-284b[2] even though he is no longer receiving weekly disability benefits under General Statutes § 7-433c.[3] We reverse the decision of the board.

[1] The Connecticut department of administrative services, the Connecticut conference of municipalities and the Connecticut interlocal risk management agency filed briefs in support of the city.

[2] General Statutes (Rev. to 1991) § 31-284b (a) provides: "In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer, as defined in section 31-275, who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund, as defined in section 31-53, shall provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury."

[3] General Statutes § 7-433c (a) provides: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employ-

The commissioner found the following facts. The plaintiff is a retired police officer who qualified for benefits pursuant to § 7-433c, commonly referred to as the Heart and Hypertension Act, after suffering a heart attack on March 6, 1991. He also received separate disability pension payments from the city for group health and medical coverage, which included dental and vision benefits, and life insurance for himself and his family. The city canceled the group coverage for the plaintiff and his family effective September 1, 1996, after learning that the plaintiff was no longer receiving indemnity benefits under § 7-433c. The city, however, continued to pay benefits under the plaintiff's compensation claim, consisting of semiannual physician visits for his § 7-433c condition along with payments for drugs prescribed by his physician related to his compensable condition.

The plaintiff sought reinstatement of his dental, vision and life insurance coverage pursuant to § 31-284b. He claimed that as long as he received benefits under § 7-433c, he was entitled to dental and vision benefits, and life insurance at the city's expense. The city contended that the plaintiff no longer was entitled to those benefits under § 31-284b because he no longer was receiving a weekly indemnity benefit intended to compensate him for disability, wage loss or lost earning capacity. The commissioner found that the plaintiff

ment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

qualified for the dental, vision and life insurance coverage that was in effect in 1991, and ordered the city to reinstate such benefits. The board affirmed the commissioner's finding and award. The city now appeals.

As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 797–98, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

The interpretation of § 31-284b is a matter of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the

statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 286, 722 A.2d 1205 (1998); *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 195, 708 A.2d 1371 (1998). "As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." (Internal quotation marks omitted.) *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 641–42, 729 A.2d 212 (1999).

In this appeal, the city argues that § 31-284b does not require an employer to provide health insurance coverage to an employee receiving coverage for medical care and prescriptions after indemnity payments have ceased, and that the board therefore improperly affirmed the commissioner's conclusion that the city was obligated to provide health insurance coverage to the plaintiff and his family. We agree.

General Statutes (Rev. to 1991) § 31-284b (a), which was in effect at the time of the plaintiff's injury, provides in relevant part: "In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer . . . who provides accident and health insurance or life insurance coverage for any employee . . . shall provide to such employee equivalent insurance coverage . . . *while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter*, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury." (Emphasis added.)[4] The

---

[4] Section 31-284b (a) was amended by Public Acts 1991, No. 91-32, to condition the employer's obligation to provide insurance coverage on the employee's receipt of "compensation pursuant to this chapter" as opposed to "workers' compensation payments pursuant to this chapter."

city argues that § 31-284b (a) benefits are triggered during periods of time when an injured employee is receiving or entitled to receive "compensation payments . . . or . . . wages under a provision for sick leave payments for time lost due to an employment-related injury." The city claims that the meaning of "compensation payments" as used in the statute must be limited to indemnity payments, or those payments for time lost due to an employment-related injury. Once those payments cease, even though the claimant is covered under § 7-433c for physician's visits and prescribed medication related to the injury, the employer is no longer obligated to provide group health insurance providing dental and vision benefits and life insurance for the claimant and his family.

The board, in affirming the decision of the commissioner, held that the commissioner correctly ruled "that although the claimant was not currently receiving indemnity benefits, *the medical bills being paid by the city constituted compensation benefits.* Thus, the claimant was receiving or eligible to receive compensation payments within the meaning of § 31-284b." (Emphasis added.) In so concluding, the board relied on a definition of compensation from General Statutes § 31-293 because neither § 31-284b nor General Statutes (Rev. to 1991) § 31-275, the general definitional section for the Workers' Compensation Act, contained such a definition. The board stated that "[a]t the time of the claimant's injury, § 31-293 stated that [t]he word compensation, as used in this section, shall be construed to include not only incapacity payments to an injured employee and payments to the dependents of a deceased employee, but also *sums paid out for surgical, medical and hospital services to an injured employee* . . . ." (Emphasis added; internal quotation marks omitted.) The board recognized that Public Acts 1991, No. 91-32 (P.A. 91-32), had amended § 31-275

effective July 1, 1991, to include in subdivision (4) a definition of compensation similar to that contained in § 31-293.[5]

The city argues that the board's reliance on the definition of "compensation" contained in § 31-293, the third party lien statute, to define "compensation payments" in § 31-284b is improper. We agree. Section 31-293 provides that "the word 'compensation,' *as used in this section*, shall be construed to include . . . sums paid out for surgical, medical and hospital services . . . ." (Emphasis added.) By the words of the statute themselves, that definition of "compensation" applies only to § 31-293 and not to § 31-284b. Furthermore, § 31-275, as amended by P.A. 91-32 to include a definition of compensation similar to that previously contained in § 31-293, does not apply to this case. The claimant's substantive right to benefits is governed by the law as it existed on the date of his injury. *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988); see *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994) (applying version of § 31-275 at time of injury rather than using amended version to define "compensation").

Construing the statutes as they existed at the time of the plaintiff's injury, we conclude that the term "compensation payments" as used in § 31-284b (a) does not include payments for medical care after the indemnity compensation period has ceased. The statute mandates that an employer is required to continue insurance benefits only while an employee is receiving "compensation

[5] Subsequent to its amendment in 1991, General Statutes § 31-275 (4) provides: " 'Compensation' means benefits or payments mandated by the provisions of this chapter, including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 31-294d and any type of payment for disability, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, payments made under the provisions of section 31-284b, 31-293a or 31-310, or any adjustment in benefits or payments required by this chapter."

payments" for disability under the Workers' Compensation Act.[6]

The plaintiff argues that the board's decision should be affirmed because the board sought to further the underlying purpose of the Workers' Compensation Act by enforcing the express objective of § 31-284b (a) that seeks to "maintain, as nearly as possible, the income of employees who suffer employment-related injuries . . . ." General Statutes (Rev. to 1991) § 31-275 (14) defines the term "income" as "all forms of remuneration to an individual from his employment, including wages, accident and health insurance coverage . . . ." In addition, the plaintiff, quoting *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990), argues that" '[b]ecause the Workers' Compensation Act is a remedial statute, this court should not impose limitations on the benefits provided for a disabled worker that the statute itself does not clearly specify.' " In *Carriero* v. *Naugatuck*, 243 Conn. 747, 707 A.2d 706 (1998), the plaintiff made a similar claim. The court in that case stated: "[T]he plaintiff argues that our determination of the present case should be controlled by application of the interpretive axiom that, in order to facilitate the accomplishment of the objectives of remedial legisla-

---

[6] Although both parties maintain that the wording of General Statutes § 31-284b is clear and that no legislative history is necessary to clarify its meaning, the city has cited to several remarks of legislators relating to § 31-284b that it claims support its position. The plaintiff argues that the cited remarks are insufficient to support the city's claim. After reviewing the legislative history, we find that it does not help us to define clearly the term "compensation payments" as it is used in § 31-284b. While it is correct that the portions of legislative history referred to by the city suggest that continuing insurance coverage of an injured employee by his or her employer is for an employee who is "drawing workmen's compensation pay or sick pay," "while they are incapacitated" or "while they're out on workmen's compensation," there are no comments directed to the situation presented in this case where indemnity payments have ceased. The focus of the legislative comments are on the period when the employee is receiving regular compensation payments.

tion, the limitations on that legislation should be interpreted narrowly. It is true that this court has, in the past, found that axiom helpful in construing aspects of the Heart and Hypertension Act. See *Szudora* v. *Fairfield*, 214 Conn. 552, 559, 573 A.2d 1 (1990) ([i]n light of the remedial nature of the Heart and Hypertension Act, this court should not impose greater constraints on the benefits afforded to disabled police officers and firefighters than the legislature has chosen to adopt) . . . . Axioms such as this, however, cannot displace the need for careful and thoughtful interpretation of [the statutory provisions at issue], nor can they displace the firm conclusions that such a process of interpretation yields. [Such] axioms, like all rules or canons of statutory construction, serve as important guidelines to the determination of legislative meaning. To permit them to displace the conclusions that careful interpretation yields, however, would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies. *United Illuminating Co.* v. *New Haven*, [240 Conn. 422, 454–55, 692 A.2d 742 (1997)]." (Citation omitted; internal quotation marks omitted.) *Carriero* v. *Naugatuck*, supra, 761–62.

In *Crocetto* v. *Lynn Development Corp.*, 223 Conn. 376, 612 A.2d 1212 (1992), the issue was whether a subsistence allowance provided to a plaintiff who had exhausted his disability benefits and subsequently had his health insurance coverage terminated, constituted "workers' compensation payments" within the meaning of § 31-284b. The Supreme Court determined that the subsistence payments did not qualify as workers' compensation payments under § 31-284b. Id., 381. As such, they could not be used to support an award of § 31-284b benefits. The court in *Crocetto* viewed the case in the light of a need for the plaintiff to be receiving pay-

ments required by statute or regulation to trigger § 31-284b coverage. Id., 382. Comparing the payments for the plaintiff's medical care in the present case to those ruled not to constitute compensation in *Crocetto*, we conclude that the payments received in this case are less like compensation than the ones in *Crocetto* and therefore do not trigger § 31-284b benefits.

We conclude, therefore, that the board incorrectly interpreted § 31-284b as requiring the city to continue insurance coverage for the plaintiff and his family once the plaintiff's workers' compensation payments ended.

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to reverse the decision of the commissioner.

In this opinion the other judges concurred.