NANCY O'NEIL, ADMINISTRATRIX (ESTATE OF BRUCE C. CHASE) *v.* HONEYWELL, INC., ET AL.
(AC 19295)

Schaller, Spear and O'Connell, Js.

Argued March 19—officially released October 23, 2001

*Donald R. Beebe*, with whom was *Susan B. Carr*, for the appellant (plaintiff).

*Yinxia Long*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellee (defendant second injury fund).

*Opinion*

SPEAR, J. The plaintiff, Nancy O'Neil, administratrix of the estate of Bruce C. Chase (claimant), appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) to open an approved stipulation in which the defendant second injury fund (fund) agreed to pay the claimant $384,000 in full and final settlement of his workers' compensation claim. The plaintiff claims that the board improperly affirmed the commissioner's decision because the commissioner did not have the power or jurisdiction (1) to set aside the approved stipulation on equitable grounds and (2) to issue an order for a de novo hearing. We reverse the decision of the board.

The commissioner found the following facts. On June 28, 1988, the claimant sustained a compensable injury to his lumbar spine. Effective June 28, 1990, liability for the injury was transferred to the fund pursuant to General Statutes § 31-349.[1] The parties subsequently

---

[1] Liability was transferred from the Hartford Insurance Company, the insurer of the respondent employer, and the named defendant, Honeywell, Inc.

negotiated an agreement for a full and final settlement of the claims arising from the injury. In September, 1996, the claimant and representatives of the fund signed a document titled "Award by Stipulation," awarding the claimant $384,000. On October 4, 1996, the claimant died from an accidental overdose of prescription drugs. That same day, the claimant's counsel, without prior knowledge of the claimant's death, delivered the stipulation to the second district office of the workers' compensation commission.[2]

A hearing was conducted on October 18, 1996, at which time the commissioner approved the stipulation. Counsel for the claimant, the claimant's heirs, his prior counsel, the administratrix of his estate and her counsel were present at the hearing. The fund was not notified of the hearing, had no representative at the hearing and contends that it was not advised of the claimant's death until October 25, 1996.

On November 1, 1996, the fund filed a motion to open the approved stipulation. The motion was assigned to a different commissioner. The fund argued that lack of notice of the October 18, 1996 hearing violated its right to due process and that failure to disclose the claimant's death violated principles of fairness and full disclosure.

In his finding and award dated October 30, 1997, the commissioner initially acknowledged that the Workers' Compensation Act (act), General Statutes § 31-275 et seq., directs that the best interests of the claimant must be considered when approving a stipulation, that notice must be given to the parties and hearings must be held only in matters that are disputed or contested, and that the act does not appear to require notice of a hearing for approval of a stipulation. He also observed, however, that our Supreme Court has deemed the commis-

---

[2] Later that day, after the delivery of the stipulation, the claimant's counsel was notified of the claimant's death.

sioner to be "the adviser of all and the umpire between the disputants"; *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 149, 93 A. 245 (1915); and that General Statutes § 31-298 mandates that a commissioner proceed "so far as possible, in accordance with the rules of equity. . . ." He, therefore, granted the fund's motion to open and ordered that an approval hearing be scheduled with notice to both parties so that the fund would have the opportunity to "object to the stipulation approval process" if it chose to do so.

Thereafter, the plaintiff appealed from the commissioner's decision. On January 28, 1999, the board affirmed the decision on equitable grounds pursuant to *Secola* v. *State of Connecticut Comptroller's Office*, No. 3102 CRB-05-95-06 (February 26, 1997). In *Secola*, the commissioner declined to approve a proposed stipulation because the respondent no longer agreed to the stipulation terms, thus negating the existence of a valid agreement under General Statutes § 31-296. *Secola* v. *State of Connecticut Comptroller's Office*, supra, No. 3102 CRB-05-95-06. The board in the present case observed that "the trial commissioner found that if the fund had been informed of the claimant's . . . death, the fund would not have agreed to approval of the stipulation" and concluded that "the trial commissioner's findings that the fund was neither provided with notice of the claimant's . . . death, nor with notice of the October 18, 1996 hearing, support his conclusion that approval of the stipulation . . . was not equitable." This appeal followed.

## I

The plaintiff first claims that the board improperly affirmed the commissioner's decision because the commissioner exceeded his power in setting aside the approved stipulation agreement on equitable grounds. We agree.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals.

The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . .

"Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." (Citations omitted; internal quotation marks omitted.) *Kelly* v. *Bridgeport*, 61 Conn. App. 9, 13–14, 762 A.2d 480 (2000), cert. denied, 255 Conn. 933, 767 A.2d 104 (2001).

"Although the [Workers' Compensation Act] does not explicitly provide for [stipulated settlement agreements], we have consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation." *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 480, 650 A.2d 1240 (1994). Section 31-296[3] provides that once an agreement is reached, a commis-

---

[3] General Statutes § 31-296 provides in relevant part: "If an employer and an injured employee . . . reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the

sioner may approve the agreement if it conforms "in every regard" to the provisions of chapter 568 of the General Statutes. "Approval of . . . a stipulation by the commissioner is not an automatic process. It is his function and duty to examine all the facts with care before entering an award, and this is particularly true when the stipulation presented provides for a complete release of all claims under the act." *Welch* v. *Arthur A. Fogarty, Inc.*, 157 Conn. 538, 545, 255 A.2d 627 (1969). Once approved, "an Award by Stipulation is a binding award which, on its terms, bars a further claim for compensation unless [General Statutes §] 31-315, which allows for modification, is satisfied." (Internal quotation marks omitted.) *Gagne* v. *Tilcon, Inc./Tomasso*, No. 4031 CRB-03-99-03 (May 25, 2000).

"Section 31-315[4] allows the commission to modify an award in three situations. First, modification is permitted where the incapacity of an injured employee has increased, decreased or ceased, or . . . the measure

---

employer with a statement of the time, place and nature of the injury on which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter [568] in every regard, he shall so approve it. . . ."

[4] General Statutes § 31-315 provides: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter or any transfer of liability for a claim to the Second Injury Fund under the provisions of section 31-349 shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party or, in the case of a transfer under section 31-349, upon request of the custodian of the Second Injury Fund, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement, award or transfer in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

of dependence on account of which the compensation is paid has changed . . . . Second, the award may be modified when changed conditions of fact have arisen which necessitate a change of [the award]. . . . Third, [t]he commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court." (Internal quotation marks omitted.) *Liano* v. *Bridgeport*, 55 Conn. App. 75, 83–84, 737 A.2d 983, cert. denied, 252 Conn. 909, 743 A.2d 619 (1999). Here, the issue is whether the commissioner properly granted the defendant equitable relief under the third ground for modification.

In discussing the power to grant equitable relief, our Supreme Court has stated that "[c]ourts of equity may grant relief from the operation of a judgment when to enforce it is against conscience, and where the appellant had no opportunity to make defense, or was prevented from so doing by accident, or the fraud or improper management of the opposite party, and without fault on his [or her] own part. . . . Fraud, accident, mistake, and surprise are recognized grounds for equitable interference, when one, without his [or her] own negligence, has lost an opportunity to present a meritorious defense to an action, and the enforcement of the judgment so obtained against him [or her] would be against equity and good conscience, and there is no adequate remedy at law. . . . Equity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his [or her] counsel, unless the mistake is unmixed with negligence, or . . . unconnected with any negligence or inattention on the part of the judgment debtor . . . ." (Citations omitted; internal quotation marks omitted.) *Cavallo* v. *Derby Savings Bank*, 188 Conn. 281, 284–85, 449 A.2d 986 (1982); *Hoey* v. *Investors' Mortgage & Guaranty Co.*, 118 Conn. 226, 230–31, 171

A. 438 (1934). "[T]he rule is founded on the necessity of the case; for if it was otherwise, petitions to set aside or enjoin judgments at law would become too common, and a court of equity be compelled generally to revise decisions at law which on legal principles should be final." (Internal quotation marks omitted.) *Hayden* v. *Wallace & Sons Mfg. Co.,* 100 Conn. 180, 186, 123 A. 9 (1923).

We conclude that the commissioner did not have authority to grant the fund equitable relief under § 31-315 because there is no evidence that the fund was prevented from making a defense by fraud, accident, mistake, surprise or improper management of the opposite party. Paragraph eighteen of the signed stipulation agreement unequivocally states that "[i]t is agreed by and among the parties hereto that this stipulation was not induced nor entered into by fraud, accident, mistake or duress . . . ." Moreover, under the recognized grounds for equitable interference previously cited, neither the court nor the plaintiff had a duty to inform the defendant of the approval hearing and the claimant's death *after* the agreement was signed, and their failure to do so could not have affected the defendant's ability to make a defense because the parties already had reached a "full, final and complete" settlement of all claims arising from the injury. Accordingly, there is no equitable ground under § 31-315 on which to provide the relief requested.

Section 31-298 is also an improper basis on which to grant the fund's motion to open and to set aside the approved stipulation. Section 31-298,[5] titled "Conduct

---

[5] General Statutes § 31-298 provides: "Both parties may appear at any hearing, either in person or by attorney or other accredited representative, and no formal pleadings shall be required, beyond any informal notices that the commission approves. In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records,

of hearings," mandates that "[i]n all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. . . ." Section 31-298 further provides that the commissioner shall proceed "in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ."

Our Supreme Court has noted that, although § 31-298 expressly refers to the rules of equity, the provision "deals with the manner in which testimony is obtained and hearings are conducted." *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 765, 730 A.2d 630 (1999). Accordingly, the equitable requirements of § 31-298 do not apply to the scheduling of hearings and notice to the parties, matters that are specifically addressed in another part of the statutes, General Statutes § 31-297.[6]

in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. No fees shall be charged to either party by the commissioner in connection with any hearing or other procedure, but the commissioner shall furnish at cost (1) certified copies of any testimony, award or other matter which may be of record in his office, and (2) duplicates of audio cassette recordings of any formal hearings. Witnesses subpoenaed by the commissioner shall be allowed the fees and traveling expenses that are allowed in civil actions, to be paid by the party in whose interest the witnesses are subpoenaed. When liability or extent of disability is contested by formal hearing before the commissioner, the claimant shall be entitled, if he prevails on final judgment, to payment for oral testimony or deposition testimony rendered on his behalf by a competent physician, surgeon or other medical provider, including the stenographic and videotape recording costs thereof, in connection with the claim, the commissioner to determine the reasonableness of such charges."

[6] General Statutes § 31-297 provides: "If an employer and his injured employee, or his legal representative, as the case may be, fail to reach an agreement in regard to compensation under the provisions of this chapter, either party may notify the commissioner of the failure. Upon such notice, or upon the knowledge that an agreement has not been reached in a case in which a right to compensation may exist, the commissioner shall schedule an early hearing upon the matter, giving both parties notice of time and place not less than ten days prior to the scheduled date; provided the commissioner may, on finding an emergency to exist, give such notice as

We are also unpersuaded that *Secola* is relevant in the present circumstances. In *Secola,* the board considered the propriety of a commissioner's refusal to approve a stipulation that the parties had agreed to several days before the claimant died of cancer. *Secola* v. *State of Connecticut Comptroller's Office,* supra, No. 3102 CRB 05-95-06. The commissioner found that the insurance adjuster was not informed of the claimant's terminal illness during settlement negotiations and that her illness had a direct effect on the nature and extent of future benefits for which the respondent might be liable. Id. In affirming the commissioner's decision, the board stated that "protecting the employee's rights does not mean ignoring the rights of the employer or insurer. Fairness and equity are two-way streets, and the commissioner is certainly entitled to consider more than the claimant's position in deciding whether a stipulation should be approved." Id. The board concluded that "the commissioner . . . may exercise his authority to withhold approval of a stipulation if the respondent no longer concords with its terms when it is submitted for ratification. In this case, the trial commissioner's findings support his decision to deny approval of the stipulation." Id.

*Secola* is distinguishable from the present case on several grounds. First, the procedural issue in that case involved the commissioner's decision to withhold

he finds reasonable under the circumstances. If no agreement has been reached within sixty days after the date notice of claim for compensation was received by the commissioner, as provided in section 31-294c, a formal hearing shall be scheduled on the claim and held within thirty days after the end of the sixty-day period, except that if an earlier hearing date has previously been scheduled, the earlier date shall prevail. Hearings shall be held, if practicable, in the town in which the injured employee resides; or, if it is not practicable to hold a hearing in the town, in any other convenient place that the commissioner may prescribe. Sufficient notice of the hearing may be given to the parties in interest by a brief written statement in ordinary terms of the date, place and nature of the injury upon which the claim for compensation is based."

approval of a stipulated agreement between the parties, not the opening of an approved agreement, as is the case here. Second, the factual circumstances were completely different in *Secola* because the plaintiff withheld important information from the respondent concerning her health that directly affected the calculation of her benefits. Here, by contrast, although the fund argued in its motion to open that more information was needed as to the cause of the claimant's death and any known conditions that might have shortened his life, there is no suggestion, or even reason to believe, that the claimant withheld such information from the defendant, especially in view of the fact that the commissioner found the death to be accidental. Finally, the board here incorrectly concluded that the commissioner found that the fund, had it been informed of the claimant's untimely death, would not have agreed to approval of the stipulation, just as the respondent in *Secola* did not agree with the stipulation when submitted for approval, because a careful reading of the commissioner's decision discloses that he did not make such a finding.

II

In light of our conclusion in part I of this opinion that the commissioner did not have the authority to open and to set aside the approved stipulation, we need not review the plaintiff's claim that the commissioner exceeded his authority in issuing an order for a de novo hearing.

The decision of the compensation review board is reversed and the case is remanded to the board with direction to vacate the commissioner's finding and award dated October 30, 1997, and to reinstate the commissioner's finding and award of October 18, 1996.

In this opinion the other judges concurred.