JAMES DAY *v.* CITY OF MIDDLETOWN ET AL.
(AC 17283)

Foti, Landau and Spear, Js.

Argued February 14—officially released September 12, 2000

*James F. Aspell,* for the appellant (Furniss and Quinn, P.C.).

*Opinion*

SPEAR, J. The law firm of Furniss and Quinn, P.C. (firm), a de facto party in this case,[1] appeals from the decision of the workers' compensation review board (board) reducing the amount of attorney's fees awarded to the firm from $30,000 to $20,000.[2] The firm claims that the board improperly substituted its judgment for that of the workers' compensation commissioner (commissioner) in setting the attorney's fees. We affirm the decision of the board.

---

[1] We originally dismissed this appeal, holding that the firm was not a party to the workers' compensation proceedings and, therefore, was limited to filing a writ of error. See *State* v. *Salmon,* 250 Conn. 147, 735 A.2d 333 (1999). Our Supreme Court, however, reversed our judgment and concluded that because the underlying compensation claim had been settled, leaving only the matter of attorney's fees unresolved, the firm was a de facto party that was entitled to appeal. *Day* v. *Middletown,* 245 Conn. 437, 441–42, 716 A.2d 47 (1998). The Supreme Court then remanded the case to this court for a hearing on the merits. Id., 438.

[2] The named defendant, the city of Middletown, which was the plaintiff's employer, and the city's insurer, the defendant Alexsis, Inc., are not parties to this appeal.

The following facts and procedural history are relevant to this appeal. On September 27, 1993, the plaintiff, James Day, retained the firm to represent him in the prosecution of a workers' compensation action. The plaintiff agreed to pay the firm attorney's fees of 20 percent of his gross recovery, subject to the commissioner's approval.[3] The firm represented the plaintiff for almost two years. During that time, the firm obtained documents from the plaintiff's physician, attended numerous informal conferences and four formal evidentiary hearings, and participated in the deposition of four medical witnesses.

On March 7, 1995, following the conclusion of the evidence in the formal proceedings, the plaintiff discharged the firm as counsel and retained attorney Kenneth Bartlett in its place. On September 21, 1995, the plaintiff agreed to a lump sum settlement in the amount of $100,000. Formal hearings were subsequently held to determine the amount of attorney's fees owed to the firm and to Bartlett.[4] On February 2, 1996, the commissioner awarded the firm $30,000 in attorney's fees.

The plaintiff appealed to the board from the commissioner's award of attorney's fees. The board reversed the commissioner's decision and reduced the award of attorney's fees from $30,000 to $20,000. The board held that (1) the $30,000 award was contrary to the workers' compensation fee guidelines (fee guidelines) promulgated by the chairman of the workers' compensation commission pursuant to General Statutes § 31-280 (b)

---

[3] The attorney's fees agreement dated September 27, 1993, provides in relevant part that the firm "shall be entitled to a fee of 20% of the total gross amount of money or benefit realized, before the deduction of any expenses or bills. . . . It is expressly understood that any such fee is subject to the approval of the appropriate workers' compensation commissioner."

[4] The firm and Bartlett apparently reached an agreement as to the apportionment of the legal fees and there is no dispute between those parties.

(11) (C), and (2) the plaintiff's attorney's fee agreement entitled the firm to only $20,000. This appeal followed.[5]

The firm first claims that the board improperly reduced its award of attorney's fees from $30,000 to $20,000 because such a determination is within the sole discretion of the commissioner pursuant to General Statutes § 31-327 (b).[6] We disagree.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Internal quotation marks omitted.) *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 603–604, 748 A.2d 278 (2000).

The firm argues that the commissioner's authority with respect to attorney's fees derives from § 31-327 (b), which provides in relevant part that "[a]ll fees of attorneys . . . shall be subject to the approval of the commissioner."[7] We agree with the board's conclusion

---

[5] See footnote 1.

[6] General Statutes § 31-327 (b) provides in relevant part: "All fees of attorneys . . . for services under this chapter shall be subject to the approval of the commissioner."

[7] The firm also relies on *Imbrogno* v. *Stamford Hospital*, 28 Conn. App. 113, 124, 612 A.2d 82, cert. denied, 223 Conn. 920, 615 A.2d 507 (1992), *Balkus* v. *Terry Steam Turbine Co.*, 167 Conn. 170, 179 n.8, 355 A.2d 227 (1974), *Menzies* v. *Fisher*, 165 Conn. 338, 349, 334 A.2d 452 (1973), and *Tartakovsky* v. *Sohmer/Pratt & Read*, 7 Conn. Workers' Comp. Rev. Op. 46,

that § 31-327 (b) only "gives the [commissioner] the power to examine all attorney's fee agreements to ensure that they are consistent with the fee guidelines . . . ." General Statutes § 31-280 (b) (11) (A) empowers the chairman of the workers' compensation commission to "[e]stablish standards in consultation with the advisory board for approving all fees for services rendered . . . by attorneys . . . ." Subsection (11) (C) directs the chairman to "[i]ssue, not later than October 1, 1993, and publish annually thereafter, guidelines for the maximum fees payable by a claimant for any legal services rendered by an attorney . . . ." General Statutes § 31-280 (b) (11) (C). In compliance with that statutory provision, the chairman issued the following relevant guideline: "4. Settlement or stipulation. An attorney may charge no more than 20% of the total of the settlement or stipulation, less medical bills that are paid by the claimant." Accordingly, because the plaintiff settled this case for $100,000, the only discretion the commissioner had was to award attorney's fees in an amount not in excess of $20,000, or 20 percent of the plaintiff's gross recovery award.

The firm next argues that in reducing the attorney's fees award the board improperly substituted its factual findings for that of the commissioner. Specifically, it argues that the board was limited to hearing the "appeal on the record" and could not retry the facts. This claim is without merit. While the board generally is bound by the factual findings of the commissioner, the commissioner's conclusions will not stand if predicated on a misapplication of the law. *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). Here, the board reversed the commissioner's decision because the commissioner failed to follow the fee guide-

47 (1989). None of these cases support the firm's proposition, nor were any of them decided subsequent to the promulgation of the fee guidelines.

lines, not because it made findings of fact that were different from the commissioner's.

The firm next contends that the commissioner's attorney's fees award did in fact follow the fee guidelines. The firm claims that it is the board that did not follow the guidelines because the board failed to consider the plaintiff's $33,340 in outstanding medical bills when it determined the amount of attorney's fees. To support its claim, the firm points out that § 4 of the fee guidelines mandates that only medical bills "paid by the claimant" be deducted before determining the percentage due as attorney's fees. The commissioner "noted that the respondent-employer paid the outstanding medical bills and not the claimant in accordance with the terms of the stipulation." Thus, the firm argues that the commissioner correctly reasoned that because the employer, not the plaintiff, paid the outstanding medical bills in accordance with the terms of the stipulation, the deduction mandated by § 4 of the fee guidelines did not apply. The board disagreed, however, ruling that the commissioner improperly included the "value of the medical bills paid *on the claimant's behalf*," in arriving at an award of $30,000. (Emphasis added.) We agree with the board.

We interpret the regulations of an administrative body pursuant to the principles of statutory construction. *Preston* v. *Dept. of Environmental Protection*, 218 Conn. 821, 829 n.9, 591 A.2d 421 (1991). We see no reason not to apply those principles here where the chairperson of the workers' compensation commission, pursuant to statutory authority, is authorized to promulgate regulations[8] and guidelines.[9] "When interpreting a regulation, we must use common sense. *Citerella* v.

---

[8] General Statutes § 31-280 (b) provides in relevant part: "The chairman of the Worker's Compensation Commission shall . . . (3) Adopt regulations . . . to carry out his responsibilities under this chapter . . . ."

[9] See footnote 6.

*United Illuminating Co.*, 158 Conn. 600, 609, 266 A.2d 382 (1969). 'Courts must assume that a reasonable and rational result was intended and construe the regulation accordingly.' Id. When confronted with two possible interpretations, courts will adopt the interpretation that makes the regulations effective and workable, and not the one that leads to unreasonable results. *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission,* 212 Conn. 727, 737–38, 563 A.2d 1347 (1989). 'The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of [a regulation] is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable.' *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984)." *Fullerton* v. *Dept. of Revenue Services,* 245 Conn. 601, 612, 714 A.2d 1203 (1998). We, therefore, presume that a reasonable and rational result was intended by the chairman in adopting the fee guidelines.

If we were to adopt the commissioner's interpretation of § 4 of the fee guidelines, it could lead to irrational and unreasonable results. For example, suppose that a claimant with $50,000 in medical bills settles his case for $150,000. If the employer pays the medical bills and pays the claimant $100,000, under a 20 percent contingent fee agreement, the claimant would owe attorney's fees on a percentage of $150,000 because he could not deduct the medical bills before computing the fee. If the claimant settles the same case for $150,000, but elects to pay the $50,000 in medical bills himself, the claimant would owe attorney's fees on a percentage of only $100,000 because the claimant could deduct the medical bills that he had paid before determining the amount of attorney's fees. If we assume that the commissioner approves the 20 percent contingent fee, in the first case the fee would be $30,000 and, in the second case, it would be $20,000. It is not

reasonable or sensible for the legal fees on an identical settlement to vary depending on whether the claimant or the employer pays the medical bills.

The board's interpretation requiring that the value of the medical bills paid on behalf of the claimant be deducted before determining the percentage of legal fees owed is sensible and reasonable. In the previous example, the fee would be the same in each case. Each claimant would pay 20 percent of $100,000 without regard to who actually issued the check that paid the claimant's medical bills.

In the alternative, the firm claims that § 5 of the fee guidelines allowed the commissioner to consider the amount of time that the firm spent on the plaintiff's case, and, as a result, the commissioner was within the fee guidelines in awarding attorney's fees of $30,000. Section five[10] does not apply here because this case involves a settlement agreement. Section five would apply to an award that was rendered after a contested or formal hearing. Pursuant to § 4 of the fee guidelines, the firm is entitled to a maximum fee of 20 percent of the settlement.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[10] Section five of the fee guidelines provides: "Contested cases or formal hearings. An attorney may charge a contingency fee not more than 20% or an amount to be determined by the Commissioner based on time spent."