## CLEMENTINA PRIOLI *v.* STATE LIBRARY
### (AC 20471)

Lavery, C. J., and Spear and Dranginis, Js.

Argued April 4—officially released July 17, 2001

*Dwight Owen Schweitzer*, pro se, the appellant.

*Joshua A. Hawks-Ladds*, with whom, on the brief, was *Gwen P. Weisberg*, for the appellee (plaintiff).

*Opinion*

SPEAR, J. Dwight Owen Schweitzer, trial counsel for the plaintiff, Clementina Prioli, appeals from the decision of the workers' compensation review board (board), which affirmed the workers' compensation commissioner's decision denying Schweitzer's motion to open and modify an award of attorney's fees in connection with the plaintiff's case.[1] Schweitzer claims (1) that the commissioner improperly exceeded his authority in determining his fees and (2) that, in the alternative, the provisions of the Workers' Compensation Act, General Statutes § 31-275 et seq., pertaining to the commissioner's oversight and approval of attorney's fees are unconstitutionally vague. We affirm the decision of the board.

The following facts and procedural history are relevant to this appeal. In 1986, Schweitzer agreed to represent the plaintiff in a retaliatory discharge action against her former employer, the Connecticut state library. In 1994 or early 1995, the parties entered into an oral retainer agreement, in which Schweitzer agreed to accept a legal fee of 20 percent for representing the plaintiff. Thereafter, Schweitzer diligently represented the plaintiff in the workers' compensation proceeding and obtained a finding dated August 2, 1995, establish-

---

[1] General Statutes § 31-301b provides in relevant part: "Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision . . . to the Appellate Court."

In *Day* v. *Middletown*, 245 Conn. 437, 440, 716 A.2d 47 (1998), our Supreme Court concluded that a law firm retained in the prosecution of a workers' compensation claim may be considered an aggrieved party under § 31-301b, because, for purposes of that statute, "a party is a litigant with a personal stake in the outcome of the controversy." (Internal quotation marks omitted.)

ing the employer's liability pursuant to General Statutes § 31-290a.[2]

On or about August 15, 1996, Schweitzer requested that the plaintiff sign a document agreeing to increase his fee to one-third of the gross award.[3] Despite her concerns, the plaintiff signed and returned the document to him without consideration or an adequate explanation because she trusted his advice and was pleased with his work.[4] In a note attached to the signed

[2] General Statutes § 31-290a provides in relevant part: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint . . . . After the hearing . . . [t]he commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court."

[3] The document states in relevant part: "[Y]ou are entitled under the statute to 'Reasonable Attorneys Fees' in addition to any other damages to which you may be entitled.

"Whatever amount is awarded for such fees will be added to all other elements of the gross award and my fees will be calculated on the basis of 33 1/3rd% of the entire amount including that amount denominated as 'reasonable attorneys fees'."

[4] The plaintiff testified that she "didn't want to rock the boat because, after all, this matter wasn't even finished yet," and that she had accepted

agreement, she praised him for an excellent job and stated that he "deserve[d] every penny" of his fees.

Schweitzer continued to prosecute the plaintiff's claim, and commissioner George A. Waldron issued a finding and award dated February 16, 1996. The finding and award ordered reinstatement of the plaintiff to employment similar to the position she held before her termination, remittance of $145,675.60 in back pay ($203,575.84 in lost wages minus an offset of $57,900.24 for wages earned after termination), credit for her accumulated sick time and vacation time, credit for her retirement contributions and a reasonable attorney's fee of $50,000.

Both parties appealed to this court from the commissioner's decision, but withdrew their appeals with prejudice and exchanged releases pursuant to a settlement agreement dated July 2, 1996. The agreement was substantially similar to the prior award and provided for the payment of back wages owed to the plaintiff ($146,675.50, minus taxes and retirement contributions that would have been deducted had she continued working) and her reinstatement as an employee with credit for more than ten years of accrued vacation and sick leave. Unlike the prior award, however, the agreement also provided that the plaintiff would be paid "$90,000 in attorney's fees and in further consideration of her release of any and all claims against the State of Connecticut and [Connecticut state library]."

Under the terms of the settlement, the state paid the plaintiff $236,675.50. After withholding $39,515.58 in federal income taxes,[5] $6014.20 for FICA and $6600.40

the change after Schweitzer explained it to her without fully understanding the legal basis for it.

[5] That figure is taken from a document Schweitzer prepared, titled "State of Account and Reconciliation of Cash Received."

in state income taxes, the employer paid the plaintiff a net cash payment of $184,545.32.

Schweitzer then submitted to the plaintiff a document titled "State of Account and Reconciliation of Cash Received." On the basis of Schweitzer's accounting, the total value of the plaintiff's award was $390,762.12, consisting of $203,575.84 in back wages (including the credit deducted by the state for wages earned after termination), $50,000 in attorney's fees, $40,000 in interest,[6] $65,471.20 in retirement benefits, and $31,715.10 in vacation and sick day awards. Schweitzer deducted from the state's original $236,675.50 cash payment to the plaintiff his attorney's fee ($130,254.04 pursuant to the one-third contingency fee agreement), an amount for support services and research ($7997.50), state and federal income taxes ($46,115.98) and FICA ($6014.20), leaving the plaintiff with a net cash recovery of only $40,784.72.[7]

Displeased with that accounting, the plaintiff hired separate counsel to contest Schweitzer's fee. At a hearing before commissioner Stephen B. Delaney, she argued that Schweitzer's fee should be limited to $50,000, the amount determined in the 1996 award, plus payment for additional time and costs not to exceed a total of $75,000. Schweitzer introduced no evidence to support a higher fee other than the retainer agreement and the plaintiff's expressed satisfaction with his work.

---

[6] The settlement agreement did not include any payments for interest, but the accounting statement apparently subtracted this amount from the "$90,000 in attorney's fees and in further consideration of [the plaintiff's] release of any and all claims against the state of Connecticut and [Connecticut state library]," thus resulting in a figure of $50,000 for attorney's fees.

[7] Those figures are taken from the commissioner's memorandum of decision dated November 17, 1998. The same calculations by the board in its opinion dated January 13, 2000, result in net cash proceeds to the plaintiff of $40,890.76. Schweitzer disagrees with both figures and argues that an accurate calculation results in a net cash reconciliation of $46,293.78.

In a ruling dated November 17, 1998, the commissioner rejected Schweitzer's claims that the commission lacked jurisdiction to determine attorney's fees in a § 31-290a action and that the contingency fee was reasonable pursuant to *In re Estate of Salerno*, 42 Conn. Sup. 526, 630 A.2d 1386 (1993). The commissioner awarded Schweitzer a fee of $75,000, inclusive of the previous award of $50,000. The commissioner found that although the amount of attorney's fees awarded in a § 31-290a action is not the maximum an attorney may accept, Schweitzer did not provide any evidence that his expertise and ability, the time he spent on the case, the results he achieved in that time, the standard billing rate for such a case or the novelty of the legal questions he addressed warranted a higher fee pursuant to General Statutes § 31-327.

Schweitzer filed a motion to open and modify the decision, but the motion was denied. He then appealed from the denial of his motion and from the November 17, 1999 decision. The board affirmed the commissioner's decision, and this appeal followed.

I

Schweitzer first claims that the board's affirmation of commissioner Delaney's decision to "reduce" his attorney's fees to $75,000 was premised on inferences unreasonably drawn from the facts and an incorrect application of the law. We disagree.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Ser-*

*vices*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . .

"Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." (Citations omitted; internal quotation marks omitted.) *Kelly* v. *Bridgeport*, 61 Conn. App. 9, 13–14, 762 A.2d 480 (2000), cert. denied, 255 Conn. 933, 767 A.2d 104 (2001).

A

Schweitzer claims that the commissioner has no authority to "reduce" his fees because the fees are contained in a separate award. He argues that the plain language of General Statutes § 31-280 (b) (11) (C) requires the commissioner to issue guidelines for "the maximum fees *payable by a claimant*"; (emphasis added); for the legal services rendered by an attorney, which means that the commission has authority to approve attorney's fees only to the extent that the *claimant* bears the burden of paying the fees. Schweitzer contends that this provision protects a claimant from losing the benefit of her recovery, but that here, the provision does not apply because the plaintiff's employer paid her a separate amount specifically designated for attorney's fees. We do not agree.

Section 31-290a (b) (2) of the Workers' Compensation Act provides that any employee who is discharged or discriminated against because he or she has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to them pursuant to the act may file a complaint with the commissioner, and "[a]ny employee who prevails in such a complaint shall be awarded reasonable attorney's fees. . . ." Section 31-327 (a) provides that the commissioner may make an award of such fees "directly in favor of the person entitled to the fees . . . [and] . . . [t]he award may be combined with an award for compensation in favor of or against the injured employee . . . or may be the subject of an award covering only the fees and expenses." Section 31-327 (b) further provides that "[a]*ll* fees of attorneys . . . or other persons for services *under this chapter* shall be subject to the approval of the commissioner." (Emphasis added.)

"We interpret the regulations of an administrative body pursuant to the principles of statutory construction. . . . When interpreting a regulation, we must use common sense. . . . Courts must assume that a reasonable and rational result was intended and construe the regulation accordingly. . . . When confronted with two possible interpretations, courts will adopt the interpretation that makes the regulations effective and workable, and not the one that leads to unreasonable results." (Citations omitted; internal quotation marks omitted.) *Day* v. *Middletown*, 59 Conn. App. 816, 821–22, 757 A.2d 1267, cert. denied, 254 Conn. 945, 762 A.2d 900 (2000).

We conclude that the commissioner has statutory authority to approve attorney's fees contained in a separate award and that the board's affirmation of the commissioner's decision cannot be successfully challenged on that ground. Subsection (a) of § 31-327 flatly states that an award of fees to a claimant may be made sepa-

rately or combined with an award for compensation. Subsection (b) directly follows and modifies subsection (a), and further provides that *all* attorney's fees shall be subject to the commissioner's approval. Subsection (b) makes no distinction between fees that are awarded separately and fees that are combined with other compensation. In the absence of a statutory exception, we are not persuaded that a separate award of fees is exempt from the commissioner's approval.

The board itself reached a similar conclusion in *Ayala* v. *Konover Residential Corp.*, 14 Conn. Workers' Comp. Rev. Op. 87, 89 (1995), in which it stated that the "plain language" of § 31-227 (b) makes *all* attorney's fees subject to the approval of the commissioner. "[General Statutes § 1-1] requires that, in interpreting our statutes, we construe nontechnical words and phrases 'according to the commonly approved usage of the language.' 'Subject' is defined by the American Heritage Dictionary (2d Ed. 1982) as meaning '[u]nder the power or authority of another: subject to the law. . . . Contingent or dependent: subject to approval.' Black's Law Dictionary further defines 'subject to' as meaning '[l]iable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for.' It would be inconsistent with both the clear meaning of those definitions and the humanitarian purpose of the Workers' Compensation Act in general to read § 31-327 (b) as limiting the authority of commissioners to oversee attorney's fees . . . . A commissioner should be free to examine *all* attorney's fee agreements to be sure that they are consistent with the attorney's fee guidelines promulgated by the chairman of the workers' compensation commission in accordance with § 31-280 (b) (11) (C)." (Emphasis added.) *Ayala* v. *Konover Residential Corp.*, supra, 89; see also *Day* v. *Middletown*, No. 3264 CRB-8-96-2 (May 20, 1997); *LaPia* v. *Stratford*, No. 3109 CRB-4-95-6 (August 29,

1996), rev'd on other grounds, 47 Conn. App. 391, 706 A.2d 11 (1997). Accordingly, we agree with the board that Schweitzer's fee was subject to the commissioner's approval pursuant to § 31-327 (b).

## B

Schweitzer also argues that the commissioner does not have statutory authority to approve attorney's fees paid by a claimant's employer under the terms of a negotiated settlement agreement between the parties. We decline to review Schweitzer's claim.

"It is well settled that this court will not review statutory claims that are raised for the first time on appeal." *State* v. *Smith*, 255 Conn. 830, 843, 769 A.2d 698 (2001). We find no basis in the record to consider Schweitzer's newly raised statutory claim. Schweitzer did not refer to the settlement agreement in his brief to the board; he did not refer to it even in his statement of facts. He argued instead that the plaintiff waived her right to have attorney's fees approved by the commissioner when she agreed to the contingent fee arrangement. Consequently, as Schweitzer himself now points out in his brief to this court, any discussion of the $90,000 attorney's fee awarded in the settlement agreement was "conspicuously absent from [the] legal analyses" contained in the rulings of both the commissioner and the board. The board "necessarily could have made no ruling"; (internal quotation marks omitted) id.; and Schweitzer's claim as to the settlement agreement is, therefore, not reviewable.

## II

In the alternative, Schweitzer claims that the provisions of the Workers' Compensation Act pertaining to the commissioner's oversight and approval of attorney's fees are impermissibly vague, and violate his state and federal constitutional due process rights as applied to

the facts of this case. He claims that, according to the board, §§ 31-280 (b) (11) and 31-327 confer broad authority on the commissioner to regulate all attorney's fees, regardless of their source, and even permit the commissioner to modify the fees contained in a settlement agreement between the parties. He argues that, to the extent that this is a proper reading of the statutes, they cannot be enforced. This claim also is raised for the first time on appeal.

"Only in the most exceptional circumstances will this court consider a claim that was not raised [before the trial court]. . . . Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 452, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001).

Schweitzer has not requested review of his unpreserved constitutional claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[8] nor

---

[8] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Lemoine*, 256 Conn. 193, 198 770 A.2d 491 (2001). *Golding* applies to civil as well as criminal cases. *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 300, 541 A.2d 873 (1988).

has he requested plain error review.[9] We therefore decline to review his claim.[10]

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

[9] "[P]lain error [review] is properly reserved for those extraordinary situations where the error is so obvious that the fairness and integrity of and public confidence in the judicial process would be impaired were we to fail to address an issue that was not raised or preserved at trial." (Internal quotation marks omitted.) *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 69, 607 A.2d 431 (1992).

[10] "[I]t is not appropriate to engage in a level of review that is not requested." (Internal quotation marks omitted.) *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000).