******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILFREDO QUINONES *v.* R. W. THOMPSON
COMPANY, INC.
(AC 38256)

Lavine, Keller and Bishop, Js.

*Syllabus*

The plaintiff, who was injured while he was employed by the defendant
company, appealed to this court from the decision of the Compensation
Review Board, which affirmed the decision of the Workers' Compensa-
tion Commissioner denying the plaintiff's motion to preclude the defen-
dant from contesting the extent of the plaintiff's injuries. The defendant
did not contest the plaintiff's claim for certain workers' compensation
benefits by filing a form 43, as required by statute ([Rev. to 2009] § 31-
294c). Nevertheless, the defendant later filed a form 36 seeking to discon-
tinue the benefits it was paying the plaintiff, which was approved without
objection. The plaintiff thereafter filed his motion to preclude and, after
conducting a formal hearing but before ruling on that motion, the com-
missioner, T, died, and the case was assigned to a substitute commis-
sioner, D. The parties sent letters to the Workers' Compensation
Commission after they were informed that they could have a hearing
de novo or request the commission to assign a substitute commissioner
to decide the case upon review of the original record. The plaintiff
objected to a trial de novo and claimed that a decision should be rendered
upon review of the record, and the defendant had no objection to a
decision rendered based upon a review of the record. Thereafter, the
plaintiff filed an objection to D's order scheduling a formal hearing in
order to open the record for articulation of the parties' positions and
arguments, which D denied. Subsequently, D held a formal hearing, at
which time he recalled the plaintiff for further questioning, and later
issued a decision denying the plaintiff's motion to preclude. The plaintiff
appealed to the board, which affirmed the denial of his motion to pre-
clude. On appeal to this court, the plaintiff claimed, inter alia, that the
board improperly found there was no error when D rejected an alleged
stipulation that the case be decided on the original record. *Held*:
1. The plaintiff could not prevail on his claim that because the parties
    stipulated that the case would be decided on the original record before T,
    D improperly opened the record, ignored the stipulation and conducted
    a hearing de novo: D's opening of the record solely in order to question
    the plaintiff regarding payments that he received from the defendant
    was not a hearing de novo, and the board did not clearly err in finding
    that the letters that the parties sent separately to the commission did
    not constitute a contract between the parties that could be considered
    a stipulation, as there was no firm understanding between the parties
    nor a quid pro quo, and the letters were merely a statement by the
    parties of their respective positions at that time; moreover, even if a
    stipulation existed between the parties, it would not have prohibited D
    from opening the record, as D recalled the plaintiff as a witness so that
    he could hear evidence he believed was essential to a proper evaluation
    of the case, and it was fully within D's power and authority, as a commis-
    sioner, to do so; accordingly, the board correctly determined that it was
    not improper for D to have opened the record.
2. The plaintiff could not prevail on his claim that the board improperly
    affirmed the denial of his motion to preclude, which was based on his
    claim that the defendant, by failing to file a form 43 to contest the
    compensability of the plaintiff's claim for benefits, failed to comply with
    § 31-294c and was, therefore, precluded from contesting the compensa-
    bility or extent of the plaintiff's claimed injury; the defendant had no
    duty to file a form 43, as the compensability of the plaintiff's claim was
    not and had never been contested, the plaintiff timely received benefits
    until the commission approved a timely filed form 36, and there was
    no reason for the defendant to contest the extent of the plaintiff's injury
    until obtaining the information alleged in the form 36, namely, that the
    plaintiff was able to return to work.

Argued December 4, 2018—officially released February 26, 2019

Appeal from the decision of the Workers' Compensation Commissioner for the Sixth District denying the plaintiff's motion to preclude the defendant from contesting the extent of the plaintiff's injury and denying the plaintiff's motion to correct, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the plaintiff appealed to this court. *Affirmed.*

*Jennifer B. Levine*, with whom was *Harvey L. Levine*, for the appellant (plaintiff).

*Nicholas C. Varunes*, with whom was *Christopher Young*, for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, Wilfredo Quinones, appeals from the decision of the Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Sixth District, Stephen B. Delaney, denying the plaintiff's motion to preclude the defendant, R. W. Thompson Co., Inc., from contesting the extent of the plaintiff's injury. On appeal, the plaintiff claims that the board improperly (1) found there was no error when the commissioner rejected an alleged stipulation that the case be decided on the original record and (2) affirmed the denial of the plaintiff's motion to preclude despite the defendant's failure to file a form 43. We affirm the decision of the board.

The following facts and procedural history are relevant to our resolution of this appeal. On March 16, 2010, during the course of his employment with the defendant, the plaintiff sustained compensable injuries when the deck of a road paving machine fell on him. He began to receive workers' compensation benefits on March 23, 2010. Although the plaintiff timely filed a form 30C[1] claiming benefits on October 25, 2010, he refiled a form 30C on February 10, 2011, because he lost the return receipts from the postal service related to his first filing. The defendant did not contest the plaintiff's claim by filing a form 43[2] and began paying the plaintiff weekly indemnity payments in the amount of $328.58 from March 23, 2010, until November 8, 2011. On October 17, 2011, the defendant, however, sought to discontinue the benefits it was paying the plaintiff by filing a form 36,[3] alleging that the plaintiff was able to return to work.[4] The form 36 was approved without objection on November 2, 2011. Consequently, the plaintiff received no more compensation benefit payments after November 8, 2011. On February 29, 2012, the plaintiff filed a motion to preclude the defendant from denying him further compensation benefits. Commissioner Clifton Thompson conducted a formal hearing on April 18, 2012. After the hearing, but before the parties submitted posttrial briefs, Commissioner Thompson died, and the case was assigned to Commissioner Delaney.[5]

When the Workers' Compensation Commission (commission) contacted the parties regarding the former commissioner's death, the parties were told that they could have a hearing de novo or request the commission to assign a substitute commissioner to decide the case on the basis of a review of the transcript, exhibits, and as of yet unfiled briefs. The plaintiff objected to a trial de novo in a letter dated May 24, 2012, and stated that a decision should be rendered upon review of the record.[6] The defendant, in a letter dated May 24, 2012, stated that it "[had] no objection to [the] matter [being] reassigned to a new commissioner for a finding on the papers based on the April 18, 2012 formal hearing transcript and the briefs submitted by the parties."

On August 31, 2012, the commissioner scheduled a formal hearing to open the record for articulation of the parties' positions and arguments. On September 7, 2012, the plaintiff filed an objection to the commissioner's order to open the formal hearing. At a formal hearing on October 1, 2012, the commissioner heard the plaintiff's objection, and ruled that he had the authority to open the record and was recalling the plaintiff for further questioning. The plaintiff thereafter filed an appeal to the board on October 19, 2012, challenging the right of the commissioner to open the record and take further evidence. The board issued a decision on January 16, 2014, concluding that the matter was not ripe for review. On May 15, 2014, the commissioner held a formal hearing. On July 11, 2014, he issued his decision denying the plaintiff's motion to preclude. The plaintiff appealed to the board, arguing that the commissioner improperly opened the record in contravention of the parties' stipulation and denied his motion to preclude. On July 29, 2015, the board found that there was no stipulation between the parties, and even if there was a stipulation, the commissioner had the authority to open the record. The board affirmed his denial of the motion to preclude. This appeal followed.

As a threshold matter, we set forth the standard of review. "It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the board]. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Day* v. *Middletown*, 59 Conn. App. 816, 819, 757 A.2d 1267, cert. denied, 254 Conn. 945, 762 A.2d 900 (2000). "We [accord] deference to . . . a time-tested agency interpretation of a statute, but only when the agency has consistently followed its construction over a long period of time, the statutory language is ambiguous, and the agency's interpretation is reasonable." *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 719, 546 A.2d 830 (1988).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [we] first . . . consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of

such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . .

"Moreover, [i]n applying these general principles, we are mindful that the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *Kinsey* v. *World PAC*, 152 Conn. App. 116, 124, 98 A.3d 66 (2014).

"The powers and duties of workers' compensation commissioners are conferred upon them for the purposes of carrying out the stated provisions of the [act]. . . . It is well settled that the commissioner's jurisdiction is confined by the . . . act and limited by its provisions." (Citations omitted; internal quotation marks omitted.) *Tufaro* v. *Pepperidge Farm, Inc.*, 24 Conn. App. 234, 236, 587 A.2d 1044 (1991).

I

The plaintiff first claims that the commissioner improperly opened the record. Specifically, he argues that he and the defendant stipulated that the case would be decided on the record before the former commissioner, and that the commissioner improperly ignored that stipulation and conducted a hearing de novo. We disagree.

As an initial matter, we reject the plaintiff's characterization that the commissioner's opening of the record was a hearing de novo. After the matter was assigned to him, the commissioner reviewed the record and concluded that there was not enough evidence for him to make a decision. He stated that the record consisted of "a very short transcript [of the April 18, 2012 formal hearing], very short direct and [cross-examination] of the [plaintiff], and [that he had] a lot of questions [for] the [plaintiff]."[7] As a result, he opened the record in order to question the plaintiff. At the hearing on May 15, 2014, the commissioner questioned the plaintiff solely

about the payments he received. The plaintiff was unable to answer the commissioner's questions, even when shown his testimony from the October 1, 2012 hearing. The commissioner then asked counsel whether they could provide the information he requested concerning what payments the plaintiff received. Surprisingly, the plaintiff's counsel did not respond. The defendant's counsel offered a history of the benefits the defendant had paid the plaintiff. The commissioner accepted the history into evidence, which indicated that the plaintiff received weekly payments in the amount of $328.58, for a total of $28,257.88, as well as payment of medical bills totaling $66,996.09, for an overall total of $95,253.97.[8]

We also reject the plaintiff's characterization of the May 24, 2012 letters the parties sent separately to the commission as a stipulation. "[A stipulation] may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. . . . The essence of the [stipulation] is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has [rendered] judgment conforming to the terms of the agreement." (Internal quotation marks omitted.) *Portfolio Recovery Associates, LLC* v. *Healy*, 158 Conn. App. 113, 118, 118 A.3d 637 (2015).

"Absent a clearly expressed intention of the parties, the construction of a stipulation is a question of fact committed to the sound discretion of the trial court. . . . Unless the language is so clear as to render its interpretation a matter of law, the question of the parties' intent in entering into a stipulation is a question of fact that is subject to the 'clearly erroneous' scope of review." (Citations omitted.) *Rosenfield* v. *Metals Selling Corp.*, 229 Conn. 771, 780, 643 A.2d 1253 (1994).

In its opinion affirming the denial of the motion to preclude, the board stated that its "examination of the documentary evidence . . . which purportedly serves as a 'stipulation' reveals that the May 24, 2012 correspondence from [the plaintiff's] counsel to the commission was primarily a position statement reflecting [the plaintiff's] objection to a trial de novo, while correspondence to the commission from [the defendant's] counsel of the same date indicates that the [defendant] '[had] no objection to [the] matter [being] reassigned to a new commissioner for a finding on the papers based on the April 18, 2012 formal hearing transcript and the briefs submitted by the parties.' . . . [N]either of these documents rises to a level of a 'stipulation,' and the evidentiary record contains no other document which even remotely resembles a stipulation." The board also con-

cluded that even if there had been a stipulation, the commissioner would not have been bound by its terms in light of the powers entrusted to him by statute.

Upon review of the evidence, we conclude that the board did not clearly err in finding that the May 24, 2012 letters did not constitute a contract between the parties that could be considered a stipulation. There was no firm understanding between the parties nor a quid pro quo, just a statement by the parties of their respective positions at that time. We also agree with the board that, even if a stipulation existed between the parties, such a stipulation would not prohibit the commissioner from opening the record.

"[U]pon the death, disability or resignation of a judge[9] . . . during the pendency of a trial or hearing to the court, a successor judge should take the following steps pursuant to the authority granted by [General Statutes] § 51-183f: (1) become familiar with the entire existing record, including, but not necessarily limited to, transcripts of all testimony and all documentary evidence previously admitted; (2) determine, on the basis of such record and any further proceedings as the court deems necessary, whether the matter may be completed without prejudice to the parties; (3) if the court finds that the matter may not be completed without prejudice to the parties it should declare a mistrial, but if the court finds that the matter may be completed without prejudice to the parties then; (4) upon request of any party, or *upon the court's own request, recall any witness whose testimony is material and disputed and who is available to testify without due burden*; (5) take any other steps reasonably necessary to complete the proceedings; and (6) render a decision based on the successor judge's own findings of fact and conclusions of law." (Emphasis added; footnote added.) *Stevens* v. *Hartford Accident & Indemnity Co.*, 29 Conn. App. 378, 386, 615 A.2d 507 (1992).

"Although . . . a successor judge [has the power] to make his or her findings of fact based solely on transcribed testimony and exhibits, no Connecticut court has . . . defined the power of litigants to stipulate to such a procedure, thereby circumventing the procedures required under § 51-183f. Although ordinarily stipulations of the parties are adopted, the court may disapprove the parties' agreement when it finds reason. . . . A stipulation, however, is not necessarily binding on the court and, under the circumstances of a particular case, the court may be justified in disregarding it." (Citations omitted.) *Gorelick* v. *Montanaro*, 94 Conn. App. 14, 22 n.14, 891 A.2d 41 (2006). "We are mindful that a judge is not a mere umpire . . . but a minister of justice, and it follows that an agreement is not necessarily binding on the court and may justifiably be disregarded in a particular case." *Central Connecticut Teachers Federal Credit Union* v. *Grant*, 27 Conn.

App. 435, 438, 606 A.2d 729 (1992).

In the present case, the commissioner recalled the plaintiff as a witness so that he could hear evidence he believed essential to a proper evaluation of the case, that is, evidence of what payments had been made to the plaintiff. The plaintiff's testimony was material as to whether the defendant met the requirements of General Statutes (Rev. to 2009) § 31-294c.[10] It was fully within the commissioner's power and authority to do so. See General Statutes § 31-278 ("[e]ach commissioner shall . . . have power to summon and examine under oath such witnesses, and may direct the production of . . . such . . . records . . . in relation to any matter at issue as he may find proper"); General Statutes § 31-282 ("[i]f any compensation commissioner dies before the final settlement of any matter in which he had been acting in his official capacity, his successor in office may continue such matter to its completion"); and General Statutes § 31-298 ("[T]he commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter."); see also *Delgaizo* v. *Veeder-Root, Inc.*, 133 Conn. 664, 667–68, 54 A.2d 262 (1947) ("The commissioner is not bound by common law or statutory rules of evidence or procedure. He may make inquiry in the manner best calculated to do so to ascertain the rights of the parties and to carry out the spirit of the act through oral testimony or written or printed records. . . . He may require the production of records . . . ." [Citation omitted.]). The plaintiff did not provide, nor have we found, any support for the notion that a stipulation—assuming one in fact existed—between parties that was not approved by the commissioner could limit the commissioner's power. See *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 22 n.14. We, therefore, conclude that the board correctly determined that it was not improper for the commissioner to have opened the record.

II

The plaintiff's second claim is that the board improperly affirmed the denial of his motion to preclude, as the defendant failed to file a form 43. Specifically, the plaintiff argues that by failing to file a form 43 to contest the compensability of his original claim, the defendant failed to comply with § 31-294c[11] and is, therefore, precluded from contesting the compensability or extent of the plaintiff's claimed injury. We disagree and conclude that, given the circumstances, the board properly concluded that the defendant had no duty to file a form 43.

"In deciding a motion to preclude, the commissioner

must engage [in] a two part inquiry. First, he must determine whether the employee's notice of claim is adequate on its face. See General Statutes § 31-294c (a). Second, he must decide whether the employer failed to comply with § 31-294c either by filing a notice to contest the claim or by commencing payment on that claim within twenty-eight days of the notice of claim. See General Statutes § 31-294c (b). If the notice of claim is adequate but the employer fails to comply with the statute, then the motion to preclude must be granted." *Callender* v. *Reflexite Corp.*, 137 Conn. App. 324, 338, 49 A.3d 211, cert. granted, 307 Conn. 915, 54 A.3d 179 (2012) (appeal withdrawn September 25, 2013).

" 'The first two sentences of § 31-294c (b) address the procedure that an employer must follow if it wants to contest liability to pay compensation . . . . The statute prescribes therein that, within twenty-eight days of receiving a notice of claim, the employer must file a notice stating that it contests the claimant's right to compensation and setting forth the specific ground on which compensation is contested. The third sentence: (1) provides that an employer who fails to file a timely notice contesting liability must commence payment of compensation for the alleged injury within that same twenty-eight day period; and (2) grants the employer who timely commences payment a one year period in which to "contest the employee's right to receive compensation on any grounds or the extent of his disability"; but (3) relieves the employer of the obligation to commence payment within the twenty-eight day period if the notice of claim does not, inter alia, include a warning that "the employer shall be conclusively presumed to have accepted the compensability of the alleged injury or death unless the employer either files a notice contesting liability on or before the twenty-eighth day after receiving a written notice of claim or commences payment for the alleged injury or death on or before such twenty-eighth day." . . . The fourth sentence provides for reimbursement to an employer who timely pays and thereafter prevails in contesting compensability. Finally, the fifth sentence sets forth the consequences to an employer who neither timely pays nor timely contests liability: "Notwithstanding the provisions of this subsection, an employer who fails to contest liability for an alleged injury or death on or before the twenty-eighth day after receiving a written notice of claim and who fails to commence payment for the alleged injury or death on or before such twenty-eighth day, shall be conclusively presumed to have accepted the compensability of the alleged injury or death." ' " (Citation omitted; emphasis omitted.) *Dubrosky* v. *Boehringer Ingelheim Corp.*, 145 Conn. App. 261, 269–70, 76 A.3d 657, cert. denied, 310 Conn. 935, 78 A.3d 859 (2013).

"Our Supreme Court, in discerning the legislative intent behind the notice requirement of General Statutes (Rev. to 1968) § 31-297 (b), now § 31-294c (b),

explained that the statute is meant to ensure (1) that employers would bear the burden of investigating a claim promptly and (2) that employees would be timely apprised of the specific reasons for the denial of their claim. . . . The court noted that the portion of the statute providing for a conclusive presumption of liability in the event of the employer's failure to provide timely notice was intended to correct some of the glaring inequities of the workers' compensation system, specifically, to remedy the disadvantaged position of the injured employee . . . ." (Internal quotation marks omitted.) *Lamar* v. *Boehringer Ingelheim Corp.*, 138 Conn. App. 826, 840, 54 A.3d 1040, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

"The language of form 43 indicates that it is to be used by employers who are contesting their liability to pay alleged compensation benefits. The form does not include a space for those employers who initially accept liability but may later, after investigation, choose to contest the extent of the disability. This distinction is not a superficial one, as an employer who is contesting liability is distinguishable from one who solely contests the extent of the disability. . . .

"Although we have no doubt that employers may have previously used form 43 to disclaim only the extent of a disability and not liability, amending the form to suit their specific disclaimer needs, that procedure unfairly requires such employers either to amend the form or to state untruthfully their intention to contest liability in order to preserve their ability to later challenge the extent of disability. The legislature, however, designed preservation of such challenges by allowing an employer, *instead of filing a form 43*, to commence payment of compensation for the alleged injury within the twenty-eight day period; and granting the employer who timely commences payment a one year period in which to contest the employee's right to receive compensation on any grounds *or the extent of his disability* . . . ." (Citations omitted; emphasis altered; footnote omitted; internal quotation marks omitted.) *Dubrosky* v. *Boehringer Ingelheim Corp.*, supra, 145 Conn. App. 271–73.

The commissioner found that while the defendant did not file a form 43, the plaintiff timely, within twenty-eight days, received benefits until the commission approved a form 36. In its decision, the board stated: "In light of the evidence presented, the . . . commissioner reasonably concluded that because the compensability of the claim was not and had never been contested, the [defendant was] never obligated to file a form 43." We agree.

In the present case, the defendant did not contest the liability of the plaintiff's injury and compensated him until the approval of a form 36. Additionally, there was no reason for the defendant to contest the extent

of the plaintiff's injury until obtaining the information alleged in the form 36, which was filed less than a year after receiving the plaintiff's form 30C.[12] The plaintiff, therefore, was never in a disadvantaged position. "It is well settled that notice provisions under the [act] should be strictly construed. . . . As this court has recognized, however, [o]ur requirement of strict compliance . . . has presumed the possibility of compliance." (Citation omitted; internal quotation marks omitted.) *Dubrosky* v. *Boehringer Ingelheim Corp.*, supra, 145 Conn. App. 274. Considering the facts of the present case, the board did not misapply the law to the subordinate facts or draw an unreasonable conclusion. Therefore, we agree with the decision of the board.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] "A form 30C is the document prescribed by the [W]orkers' [C]ompensation [C]ommission to be used when filing a notice of claim pursuant to the [Workers' Compensation Act]." (Internal quotation marks omitted.) *Lamar* v. *Boehringer Ingelheim Corp.*, 138 Conn. App. 826, 828 n.3, 54 A.3d 1040, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

[2] "A form 43 is a disclaimer that notifies a claimant who seeks workers' compensation benefits that the employer intends to contest liability to pay compensation. If an employer fails timely to file a form 43, a claimant may file a motion to preclude the employer from contesting the compensability of his claim." (Internal quotation marks omitted.) *Lamar* v. *Boehringer Ingelheim Corp.*, 138 Conn. App. 826, 828 n.2, 54 A.3d 1040, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

[3] "A form 36 is the official document an employer must file when seeking to discontinue an employee's benefits." *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 184 n.6, 801 A.2d 783 (2002).

[4] The defendant sought to discontinue the compensation benefits it was paying the plaintiff on the basis of surveillance video obtained by its compensation insurance carrier, which showed that the plaintiff had the capacity to work.

[5] Hereinafter, we refer to Commissioner Thompson as the former commissioner and Commissioner Delaney as the commissioner.

[6] The plaintiff's letter stated in relevant part: "This letter serves to memorialize our conversation that we had on May 24, 2012 . . . . It is [the plaintiff's] position that this matter is purely procedural, and does not involve credibility issues per se. The trial transcript is fifteen pages long and there are a total of four exhibits in the record. The record thus speaks for itself. The [plaintiff] objects to any trial de novo as it is unnecessary. The parties were given their fair and full opportunity to present evidence and argue their respective positions at the [f]ormal [h]earing. The [plaintiff's] brief is virtually complete . . . . More importantly, a trial de novo will cause an unreasonable delay in these proceedings. The [plaintiff] is currently without any benefits and is in acute financial distress. Thus, time is of the essence. Another commissioner should be selected to review the entire record and render a decision."

[7] The record discloses that direct examination of the plaintiff was very short in the April 18, 2012 formal hearing and did not include questions regarding benefit payments. Furthermore, the plaintiff objected to cross-examination questions about compensation as being outside of the scope of direct. As a result, the record of the payments received by the plaintiff was limited. The plaintiff, in his posttrial brief, even notes that he "did not confirm whether the [defendant] timely commenced [with] payments within the meaning of [General Statutes § 31-294c (b)]."

[8] The plaintiff additionally argues that the commissioner's opening the record is fundamentally unfair, as the evidence of payments that was introduced "cure[d] the deficiencies in the defendant's case alerted to him by [the] plaintiff's counsel." We disagree. We do not view the commissioner's taking steps necessary to determine whether payments commenced in accordance with General Statutes § 31-294c (b) to be fundamentally unfair to the plaintiff, who received significant timely benefits until the approval of a

form 36 and has disingenuously attempted to keep evidence of such payments from being considered.

[9] These principles have been applied to workers' compensation commissioners, as well as to judges. See *Schick* v. *Windsor Airmotive Division/ Barnes Group, Inc.*, 34 Conn. App. 673, 675–77, 643 A.2d 286 (1994).

[10] Hereinafter, all references to § 31-294c in this opinion are to the 2009 revision of the statute.

[11] General Statutes § 31-294c (b) provides in relevant part: "Whenever liability to pay compensation is contested by the employer, he shall file with the commissioner, on or before the twenty-eighth day after he has received a written notice of claim, a notice in accord with a form prescribed by the chairman of the Workers' Compensation Commission stating that the right to compensation is contested . . . . If the employer or his legal representative fails to file the notice contesting liability on or before the twenty-eighth day after he has received the written notice of claim, the employer shall commence payment of compensation for such injury or death on or before the twenty-eighth day after he has received the written notice of claim, but the employer may contest the employee's right to receive compensation on any grounds or the extent of his disability within one year from the receipt of the written notice of claim . . . . Notwithstanding the provisions of this subsection, an employer who fails to contest liability for an alleged injury or death on or before the twenty-eighth day after receiving a written notice of claim and who fails to commence payment for the alleged injury or death on or before such twenty-eighth day, shall be conclusively presumed to have accepted the compensability of the alleged injury or death."

[12] Although, as the commissioner noted in his decision, the notice of approval of the form 36 was sent on November 2, 2011, which is outside of the one year "safe harbor provision," we note that the form was received by the commission on October 17, 2011. While the first form 30C the plaintiff filed was dated September 7, 2010, the form was received on October 25, 2010.